Filed 11/12/13  In re Oscar M. CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Oscar M., Jr., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. Oscar M., Sr., Defendant and Appellant. | F067230 (Stanislaus Super. Ct. No. 516444) **OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Seth F. Gorman, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

**FACTS**

**Section 300 Petition Allegations**

Two-day old Oscar M.[1] was detained at the neonatal intensive care unit of the hospital in which he was born. A Welfare and Institutions Code section 300 petition was filed alleging that Oscar M. and his biological mother, J.S., "tested positive for amphetamines" and that mother admitted to "using methamphetamines for years," including during her pregnancy. Finally, the petition alleged that Oscar M., Sr., was the presumed father and was incarcerated with a release date of March 9, 2014.[2]

**Detention Report**

A detention report filed by Stanislaus County Community Services Agency (the Agency) on October 11, 2012, indicated that mother had reported Cherokee and Choctaw ancestry in prior dependency proceedings. The report detailed prior dependency proceedings involving Oscar M.'s sibling. In those proceedings, the court had found that the Indian Child Welfare Act (ICWA) did not apply.

**Social Worker's Notes Regarding October 11, 2012, Visit**

The jurisdiction/disposition report indicates the social worker met with mother on October 11, 2012. Mother advised she would be moving "soon" and her physical and mailing address would be on "Itasca Court." Mother also reported Choctaw and

---

[1] Minor Oscar M. and his father share the same name. We refer to the elder Oscar M. as "Oscar M., Sr.," "father" or "appellant." We refer to the younger Oscar M. as "Oscar M." or "Oscar."

[2] Mother and father executed a declaration of paternity indicating that Oscar M., Sr., was the father of Oscar M.

2.

Cherokee ancestry. She said there were no other possible fathers of Oscar M. other than Oscar M., Sr.

**October 12, 2012, Filings**

Mother filed a Notification of Mailing Address on October 12, 2012, indicating an address on "ITASCA CT." The same day, father filed a Parental Notification of Indian Status, which indicated that father had no Indian ancestry as far as he knew.

**ICWA Notice**

On October 25, 2012 a Notice of Child Custody Proceeding for Indian Child (the Notice or the ICWA Notice) was filed.

We will describe certain aspects of the Notice, which relate to father's claims on appeal.

The Notice listed the child's name as "Oscar Junior M[], Jr." It designated mother's address being on "HASCA CT." An attachment to the Notice's certificate of mailing indicates the Notice was physically mailed to mother at "HASCA CT.," but the first and last numbers of the address were transposed. The Notice also listed paternal grandmother's address as being the same as mother's address.

The Notice reflects that the biological birth father has acknowledged parentage. It also indicated that it was unknown whether there has been a judicial declaration of parentage.

The Notice, as filed with the court, lists the child's birth certificate as "unavailable" and does not include a copy of the dependency petition.

**Jurisdiction/Disposition Report**

A jurisdiction/disposition report was filed by the Agency on November 1, 2012. The report indicates that "Mother confirmed Cherokee and Choctaw ancestry and was not able to provide any []new information."

3.

Oscar M.'s birth certificate was attached to the report. The child's birth certificate lists his name as Oscar Junior M[].

An attachment to the report lists Oscar M.'s paternal great-grandmother's name as "Teresa [H.]."

**November 8, 2012, Jurisdictional/Disposition Hearing**

At a November 8, 2012, jurisdictional/disposition hearing, the court said: "I find that proper notice was given. However, we need two more days for the Indian Child Welfare Act notification to perfect." The court continued the hearing to November 19, 2012.

**November 19, 2012, Continued Jurisdictional/Disposition Hearing**

At the November 19, 2012, hearing, the court determined the allegations of the dependency petition were true by a preponderance of the evidence and that Oscar M. was a person described by Welfare and Institutions Code[3] section 300, subdivisions (b), (g) and (j).

The court stated it was "unknown" if ICWA applies.[4] The subsequent minute order states it is "unknown if [ICWA] applies." However, the same minute order also

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[4] Determining whether ICWA "applies" can have multiple meanings. First, there is the determination whether ICWA notice must be sent. (§ 224.2, subd. (a).) This determination hinges on whether the court, a social worker or probation officer "knows or has reason to know that an Indian child is involved." (§ 224.2, subd. (a).) Second, there may be a later determination that ICWA "does not apply to the proceedings" (§ 224.3, subd. (e)(3)) because no tribe has determined the child is a member or eligible for membership. Thus ICWA may "apply" with respect to its notice provisions even if it ultimately "does not apply to the proceedings" under section 224.3, subdivision(e)(3). Based on the context here, the trial court's determination that it was "unknown" if ICWA applies does not refer to ICWA's notice provisions (which clearly applied). Rather the court was indicating that it was unknown at that point whether any of the tribes would determine Oscar M. was an Indian child.

4.

adopted and incorporated findings and orders from the social worker's report filed November 1, 2012. One of the findings that was adopted and incorporated into the minute order was a finding "that the Indian Child Welfare Act does not apply to these proceedings."

**Father's Writ**

Father filed a writ challenging the juvenile court's denial of services and its order setting a section 366.26 hearing. (See *Oscar M. v. Superior Court* (Mar. 5, 2013, F066178) [nonpub. opn.].)[5] Father did not raise any ICWA issues in the writ petition. We denied the petition in a nonpublished opinion. (See *ibid.*)

**Section 366.26 Report and Hearing**

The Agency filed a section 366.26 report on March 8, 2013. The report recommended the court terminate parental rights and find ICWA inapplicable.

The court found ICWA did not apply and terminated parental rights. Father now appeals the termination of his parental rights.

## DISCUSSION

## I.

### FATHER IS FORECLOSED FROM CHALLENGING ALLEGED DEFICIENCIES IN THE OCTOBER 25, 2012 ICWA NOTICE

Father raises several deficiencies in the ICWA notice, including allegedly incorrect names and a missing address. We find that father waived any claims regarding deficiencies in the ICWA notice by failing to seek prior appellate review of the trial court's November 8, 2012, finding that proper ICWA notice had been given.

"An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed." (*In re Pedro N.* (1995) 35 Cal.App.4th 183, 189.) This rule applies to ICWA notice issues.

---

[5] See California Rules of Court, rule 8.1115(b)(1).

(*Ibid*.) Here, father mounted no appellate challenge to the juvenile court's finding that proper ICWA notice had been given. Though he filed a writ challenging the disposition orders, he did not seek review of the court's finding that proper ICWA notice had been given.[6] Given this failure, he may not raise alleged deficiencies in the ICWA Notice on this appeal from the order terminating parental rights. (Cf. *ibid*.)

Father contends he has not forfeited this issue, relying on *In re Gerardo A.* (2004) 119 Cal.App.4th 988 (*Gerardo A.*). In *Gerardo A.*, this court held the father did not forfeit his ICWA claim by failing to appeal a January 2002 removal order in a timely fashion. (*Id.* at p. 993.) However, in *Gerardo A.*, the father was "first properly noticed in August 2003, when he was personally served in state prison with notice of the termination hearing.…" (*Id.* at p. 991.) Thus we held, "*[u]nder these circumstances*" the appeal was "the first opportunity" for father "to raise the issue of ICWA compliance." (*Id.* at p. 993, italics added.) In other words, we would not fault an appellant for failing to timely challenge a January 2002 order when his first proper notice of the proceedings came in August 2003.

The same cannot be said of the present case.[7] Here, father was clearly on notice of the disposition/jurisdiction order because he challenged it through writ proceedings.

---

[6] The fact that the trial court made two contradictory findings regarding ICWA applicability at the disposition hearing is immaterial. Even when the court stated it was unknown if ICWA applied, it also stated that proper ICWA notice had been given. Father is therefore foreclosed from arguing that the ICWA notice was improper under both of the trial court's contradictory findings.

[7] Moreover, the alleged ICWA violations were different in *Gerardo A.*, *supra*, 119 Cal.App.4th 988. In that case, the agency completely failed to serve ICWA notice on two tribes, "both of whom [*sic*] were entitled to notice." (*Id.* at p. 995.) In contrast, the contention we deem forfeited here is the claim that the ICWA notices were deficient due to misspellings, etc.

Thus, this appeal is not the first opportunity for father to have raised the issue of defects in the October 25, 2012, ICWA notice.[8]

## II.

### EVEN IF FATHER WERE NOT FORECLOSED FROM CHALLENGING DEFICIENCIES IN THE ICWA NOTICE, ANY DEFICIENCIES ARE HARMLESS

Even if father had not been foreclosed from raising the deficiencies in this appeal, those deficiencies were harmless.

Deficiencies in ICWA notices are subject to harmless error review. (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1414; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1162.) The purpose of ICWA notice is to enable tribes to "determine whether the child is in fact an Indian child. [Citation.]" (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.) Thus, courts have held deficiencies in the ICWA notice to be harmless where "it can be inferred" that nondeficient notice "would not have led to a different determination." (*In re Brandon T.*, *supra*, at p. 1415.) We conclude the purported deficiencies raised by father were harmless.

#### Omission of Oscar M.'s Birth Certificate

First, father contends the Agency erroneously failed to provide a copy of Oscar M.'s birth certificate. (See § 224.2, subd. (a)(5)(E).) He argues that the ICWA Notice appends the suffix "Jr." to Oscar M.'s name while the birth certificate does not. Father fails to establish prejudice. The ICWA Notice states the exact same first, middle and last name for Oscar M. as the birth certificate does. Thus, the purported discrepancy cited by father is not a misstatement of Oscar M.'s *name* because suffixes like "Jr." are not generally considered part of a person's name. (See 57 Am.Jur.2d, Name, § 8.) Rather,

---

[8] It is, however, the first opportunity for father to raise the claim that no ICWA notice was provided for the section 366.26 hearing. We therefore address that claim on the merits. (See § III, *post*.)

7.

the addition of the suffix "Jr." provided additional, correct information to the tribes, advising them that the child shares the same name as his father. There is no reason to believe the addition of "Jr." to Oscar M.'s name hampered the tribes' ability to determine whether Oscar M. was eligible for membership. To the extent there was any error in adding "Jr." to Oscar M.'s name in the ICWA Notice, or failing to provide the birth certificate, no prejudice has been demonstrated.

### The Agency's Failure to Update the Tribes Regarding the Birth Certificate's Listing of Appellant as Oscar M.'s Father

Father also points out the Notice indicates it is unknown whether he was listed on Oscar M.'s birth certificate. Father contends the Agency should have updated this information once it obtained the birth certificate. Again, we see no prejudice. If someone other than appellant had been listed on the birth certificate as Oscar M.'s father, and that person was not included in the ICWA notice, then the failure to notify the tribes that appellant was not listed as the father on the birth certificate might have been prejudicial. In such a scenario, the notice would be materially defective because the tribes would have been deprived of important information that would be helpful in determining Oscar M.'s eligibility. That is not the case here.

The inclusion of this information (i.e., that father is indeed listed on the birth certificate) would not have altered the tribes' determination as to Oscar M.'s membership or eligibility.

### Omission of the Dependency Petition

Father also notes the failure to provide a copy of the dependency petition with the ICWA Notice. We agree, the Agency erred in omitting this document. (See § 224.2, subd. (a)(5)(D).) But, the error was harmless. Father points to no material information in the dependency petition that was not included in the ICWA Notice. Thus, there is no showing that the failure to provide the dependency petition prejudiced father, Oscar M. or the tribes.

8.

**Omission of Information on Whether there had been a Judicial Declaration of Parentage**

Similarly, father alleges the ICWA notice fails to include information regarding the voluntary declaration of paternity. However, the notice states, "Biological birth father has acknowledged parentage." Father also contends the notice incorrectly states that it was "unknown" whether there had been a judicial declaration of parentage. However, he provides no argument that this error was prejudicial. Conceivably, if there had been a judicial determination of parentage in favor of an individual not named in the ICWA notice, then this type of error could have been prejudicial. Again, in that scenario, the tribes would have been deprived of material information regarding Oscar M.'s ancestry. Here, however, there is no dispute that father and mother are the parents of Oscar M. Thus, whether there had been a judicial determination of parentage is not material because the tribes were notified of the names of Oscar M.'s parents.

**Alleged Misspelling of Paternal Great-Grandmother's Name on the ICWA Notice**

Father next claims that Oscar M.'s paternal great-grandmother's name was misspelled. The evidence in the record does not support this contention. The record simply reflects that the spelling of the paternal great-grandmother's name differs from the ICWA Notice ("Theresa") to the Agency's jurisdiction report ("Teresa"). Father points to no evidence regarding which is the correct spelling. (See *In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.) On the record before us, it is equally likely that the ICWA Notice was correct and the jurisdiction report was incorrect. In sum, father has failed to carry his burden of demonstrating error on this point. (See *ibid.*)

**Allegedly Incorrect Listing of Paternal Grandmother's Address**

Father also claims paternal grandmother's address was listed incorrectly on the ICWA Notice. But, none of the tribes determined Oscar M. to be an Indian child based on his descent from paternal grandmother despite having her name and date of birth. By

definition, paternal ancestors are relevant to an ICWA determination insofar as they affect the child's eligibility *through the father*.  Here, father claimed no Indian heritage, much less tribal membership.  Thus, "it can be inferred" that nondeficient notice "would not have led to a different determination."  (*In re Brandon T.*, *supra*, 164 Cal.App.4th at p. 1415.)  Father has not shown that the inclusion of an incorrect address "could thwart a search that utilized" grandmother's correct name and date of birth.  (Cf. *In re D.W.*, *supra*, 193 Cal.App.4th at p. 418.)

### III.

### THE FAILURE TO NOTICE THE SECTION 366.26 HEARING WAS HARMLESS

Father contends the agency failed to provide notice of the section 366.26 hearing to the tribes.  We do not resolve whether error occurred[9] because we deem any lack of notice harmless in this case.

 "An ICWA notice violation may be held harmless when … even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied.  [Citations.]"  (*In re S.B.*, *supra*, 130 Cal.App.4th at p. 1162, fn. omitted.)  In response to the October 25, 2012,

---

[9] As discussed *ante*, the court made two contradictory findings after the jurisdiction/disposition hearing:  (1) that ICWA did not apply and (2) that it was unknown whether ICWA applied.  If the court had only found that ICWA did not apply, then the "failure" to notice the section 366.26 would not have been erroneous.  Notice of subsequent hearings is only required "*until* it is determined that the ICWA does not apply.  [Citations.]"  (*In re K.P.* (2009) 175 Cal.App.4th 1, 5, italics added.  See also, § 224.2, subd. (b).)  Conversely, if the court had only determined that it was unknown whether ICWA applied, then the failure to notice subsequent hearings would have been erroneous.  (§ 224.2, subd. (b).)  Thus, the dual findings complicate the analysis of whether the failure to notice the section 366.26 hearing was erroneous.  However, we need not decide that issue because we conclude the lack of notice, even if erroneous, was harmless.

ICWA notice, no tribe claimed Oscar M. was an Indian child. Thus, there is no reason to believe a notice for the section 366.26 hearing, providing the same information regarding Oscar M. and his relatives as the October 25, 2012 notice, would have changed the tribes' determination. (See § II, *ante*.)

## IV.

## THE AGENCY DID NOT VIOLATE ITS DUTY OF INQUIRY

Father argues the Agency violated its duty to sufficiently inquire about information regarding Oscar's ancestry. (See § 224.3, subds. (a) & (c).)

So long as it adequately *inquires* about the information as required by statute, the Agency does not necessarily violate section 224.3 by failing to *obtain* that information. The reason for this is obvious. Once the Agency adequately inquires about the information, its success in actually obtaining the information may be outside its control. If relatives are unavailable or have no helpful information, the Agency may be unable to obtain certain information despite adequate inquiry. "To fulfill its responsibility, the Agency has an affirmative and continuing duty to inquire about, *and if possible* obtain, this information. [Citations.]" (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1396, italics added.)

Here, father does not show any information missing from the ICWA Notice was caused by the Agency failing to inquire about the information.

First, father contends that despite his own failure to claim Indian ancestry, it is a "reasonable inference" that paternal grandmother was never asked to provide information regarding her ancestry. But the record indicates the social worker went to the residence paternal grandmother shared with mother in an "attempt[] to review ICWA information with the paternal grandmother." However, she was not present. The Agency had a duty to inquire, but not a duty to conduct a comprehensive investigation into a minor's

11.

potential Indian status.  (See *In re C.Y.* (2012) 208 Cal.App.4th 34, 39.)  The Agency simply tried to contact paternal grandmother and was unsuccessful.

Father contends that the Agency only made a single attempt to obtain ancestry information from his brother, S.M.  The record reflects otherwise.  While it is true that the Agency called S.M. on October 30, 2012, and was unable to leave a message, this was not the Agency's only attempt to contact him.  The record reflects that on October 18, 2012, the Agency attempted to reach S.M. by telephone and "left a message … requesting a return telephone call.…"  The purpose of the call was to discuss ICWA.  The Agency attempted to contact S.M. on multiple occasions.

Father also argues that some information regarding mother's ancestry is missing from the ICWA notice.  Again, father fails to show that this was the result of the Agency's failure to inquire about the information.  To the contrary, the agency did contact mother and discussed potential Indian ancestry.[10]  Mother "reported Native American Indian ancestry of [C]herokee and [C]hoctaw and stated there was not enough for them to be recognized .…"  A social worker's report indicates that mother "confirmed Cherokee and Choctaw ancestry and was not able to provide any []new information."  Accordingly, the ICWA notice reflected that mother claimed Cherokee and Choctaw ancestry.

Finally, father argues there is no indication in the record that the ICWA notice was reviewed with a maternal aunt.  It is father's duty to present ICWA error affirmatively

---

[10] Moreover, the record indicates that the Agency had difficulty communicating with mother.  There was evidence that mother would only contact the social worker through Facebook.  Shortly thereafter, mother came to the social worker's office.  She was drug tested that day and the results were positive for methamphetamine. That day, mother entered a residential treatment program.  She testified that she was not allowed to speak to anyone while in the program.

with an adequate record.  (Cf. *In re D.W.*, *supra*, 193 Cal.App.4th at pp. 417-418.)  We will not presume ICWA error has occurred.  (Cf. *ibid.*)

Father has failed to demonstrate the Agency violated its duty of inquiry.

## DISPOSITION

The order is affirmed.

_____

Poochigian, J.

WE CONCUR:


_____

Gomes, Acting P.J.


_____

Detjen, J.