Filed 12/11/13  In re L.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.B., a Person Coming Under the Juvenile Court Law. | H039610 (Santa Cruz County Super. Ct. No. DP002555) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. E.B., Defendant and Appellant. | |

E.B. (father) appeals from the juvenile court's orders terminating his parental rights and denying placement of L.B. with the paternal grandmother (grandmother) following a Welfare and Institutions Code section 366.26 hearing.[1]  Father contends that the juvenile court failed to follow the correct procedures for relative placement under section 361.3 and that it erred in finding that the Santa Cruz County Human Services Department (Department) complied with the notice requirements of the Indian Child Welfare Act (ICWA), 25 United States Code section 1902 et seq.  We affirm the order terminating parental rights.

---

[1] Further statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, the Department filed a petition pursuant to section 300, subdivision (b) (failure to protect).[2] The petition alleged that L.B. and her sister M.A. were not safe within the mother's care because of ongoing domestic violence between mother and father. The Department filed an amended petition in December 2011, altering some of the allegations and requesting detention of L.B. and M.A. After a detention hearing that same month, L.B. was placed in the care of M.A.'s paternal grandparents, and M.A. was placed in the care of her noncustodial father.

Because father indicated during the detention hearing that he had Indian heritage, the juvenile court ordered that proper notice be given to the appropriate tribes. The Indian Child Inquiry Attachment (ICWA Form 010(A)) stated that father had reported that "his paternal grandparents were part Choctaw" and that he "denied any current tribal activity." On January 24, 2012, the Department filed an ICWA attachment to the social worker's report. The attachment stated that the three Choctaw tribes and the Bureau of Indian Affairs (BIA) had been given proper notice of the hearing and that the Department had received a response from the Jena Band of Choctaw Indians stating that L.B. was not a member and was not eligible for membership in the tribe.[3] The ICWA notice contained little information about father's biological mother and father, including only their names and birthdates. The form contained no information about father's grandparents. No tribes appeared during the January 24, 2012 hearing, and the juvenile court determined that the ICWA notices had been properly given.

---

[2] Some of the facts and background in this case are taken from the record filed in *K.B. v. Superior Court*, H038956, which we took judicial notice of on our own motion on May 10, 2013.

[3] The Choctaw Nation of Oklahoma and the Mississippi Band of Choctaw Indians also responded, asserting that L.B. was not enrolled and was not eligible to be enrolled in the tribes.

On January 31, 2012, the juvenile court held an initial hearing on the section 300 petition and declared L.B. a dependent child of the court. The juvenile court recommended that mother and father be offered reunification services. The jurisdiction/disposition report filed by the department indicated that the paternal grandmother had offered to be a placement option for L.B. "at any time." The report also noted that father preferred that L.B. be placed with the paternal aunt and uncle; however, the paternal aunt and uncle lived in Manteca, California, so placement with them was not feasible. The court held a jurisdiction/disposition hearing on March 16, 2012 and sustained the allegations under section 300, subdivision (b). A six-month review hearing was set for September 11, 2012.

The Department prepared a six-month review report, which recommended reunification services to mother and father be terminated and the matter be set for a section 366.26 hearing. The report stated that "[t]he issues (domestic violence between parents, mother's prescription drug abuse and an unsafe, unsanitary home) that brought forth this dependency have not been ameliorated." It further indicated that father still preferred that L.B. be placed with the paternal aunt and uncle.

The matter was set for a contested six-month review hearing on October 31, 2012. During the six-month review hearing, the juvenile court made a finding that the parents were provided with reasonable services. The court then terminated mother and father's reunification services and set the matter for a section 366.26 hearing on February 19, 2013.

L.B. was moved into a new foster home on January 29, 2013, as her previous foster home was unable to meet her needs. The juvenile court set a hearing to consider L.B.'s change of placement. During the hearing, father's attorney noted that the Department had indicated that it would be assessing paternal relatives for placement. The juvenile court continued the placement hearing to the section 366.26 hearing date.

3

Grandmother called the Department on February 15, 2013, and requested placement. After receiving this call, the Department arranged for grandmother to visit L.B. in order to assess her suitability as a placement option. The Department described grandmother as a "good visitor" with L.B. Grandmother had a 15-year history of child protective services (CPS) referrals for her own children and the children she previously fostered, which the Department noted. In an update memo, the Department stated that it was "currently in the process of investigating this history for the purposes of relative placement."

During the section 366.26 hearing on March 25, 2013, the Department indicated that two relatives, the paternal great aunt and grandmother, had been in communication with the Department seeking placement of L.B. The Department informed the court that it was still finalizing its assessment of the relatives. Upon father's counsel's request, the juvenile court granted a continuance of the section 366.26 hearing to allow the Department to complete its placement assessments.

The juvenile court held a contested section 366.26 hearing on May 8, 2013. Mother and father testified during the hearing. Father testified about his visits with L.B. and his relationship with her. Grandmother was also present and testified that she wanted L.B. to be placed with her. Grandmother further testified that she knew she had missed a court appearance and explained that she had misunderstood the importance of the court date and had left to assist her husband on a job.

With respect to the issue of relative placement, the social worker in charge of L.B.'s case testified during the hearing that the paternal great aunt had taken herself out of the assessment process. As for grandmother, the social worker testified that there were some concerns regarding the number of CPS referrals grandmother had accrued. The social worker further stated that father did not initially recommend grandmother as a placement option for L.B., that grandmother had limited contact with L.B. over her life,

4

and that father and grandmother had "relationship issues." The social worker stated that she believed it was in L.B.'s best interest to keep her in her current placement where she was "getting her needs met" and "thriving."

After hearing testimony, the juvenile court declared that it found by clear and convincing evidence that L.B. was generally and specifically adoptable. The juvenile court then terminated father and mother's parental rights, finding that the beneficial parental exception and the sibling relation exception had not been proven. With respect to L.B.'s placement, the juvenile court explained that it was clear that there was a "broken relationship" between father and grandmother and that it was in L.B.'s best interests to keep her in her current placement. The juvenile court expressed concerns about the CPS referrals grandmother had received in the past and the fact that grandmother had not involved herself earlier in the process. Father appealed.

**DISCUSSION**

Father raises two arguments. First, he contends that the juvenile court erred in failing to place L.B. with grandmother. Second, he argues that the ICWA notices were deficient as the Department failed to conduct a reasonable inquiry into father's Indian heritage.

1. ***Relative Placement Under Section 361.3***

*Standing*

Whether father has standing to raise the relative placement issue on appeal is a threshold question that we address first. Dependency proceedings are subject to Code of Civil Procedure section 902, meaning that only "aggrieved parties" may appeal. (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734.) An "aggrieved person . . . is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

5

Appellate courts have held that the relative placement preference in section 361.3 confers upon a relative a separate, protectable interest with the minor. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034-1035 (*Cesar V.*).) An aggrieved relative who was denied placement may therefore possess standing to challenge a juvenile court's placement order, while a parent might not. (*Ibid*.) Some appellate courts have determined that once a parent's reunification services have been terminated, a juvenile court's placement order no longer affects the parent's interest. (*Id*. at p. 1035.) This is because a parent's interest in a dependency proceeding is reunification, and when reunification is terminated, decisions about the placement of the child no longer impact a parent's interest. (*Id*. at pp. 1034-1035.) Other courts have determined that even if a parent's reunification services are terminated, a parent may still have an interest in the child's placement because there is a possibility that reversal of the placement order would lead a juvenile court not to terminate parental rights. (See *In re Esperanza C.* (2008) 165 Cal.App.4th 1042.)

In *In re K.C.*, the California Supreme Court articulated the rule that "[a] parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.*, *supra*, 52 Cal.4th at p. 238.)

Father argues in his reply brief that if the Department had fulfilled its duties to assess and investigate grandmother as a potential placement for L.B., it is possible that his parental rights may not have been terminated by the juvenile court. Father frames this argument by asserting that if L.B. had been placed with grandmother, it is "reasonably probable" that he would have had more contact with L.B. We find this argument speculative, as father does not articulate how his having more contact with L.B. would affect the termination of his parental rights.

6

However, "[w]e liberally construe the issue of standing and resolve doubts in favor of the right to appeal." (*In re Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1053.) Given that father does assert that his parental rights would have been affected if grandmother had been offered placement, we will assume, without deciding, that father has standing for the purposes of discussion and conclude that the juvenile court did not abuse its discretion when it declined to place L.B. with grandmother.

*Relative Placement Preference Under Section 361.3*

When a child is removed from his or her parents' custody, the juvenile court places the care, custody, control of the child under the supervision of the child welfare agency. (§ 361.2, subd. (e).) The agency may place the child in several locations, including the approved home of a relative. (*Id.*, subd. (e)(1)-(8).) Relatives who request placement of a dependent child are given preferential consideration. (§ 361.3, subd. (a).) Preferential consideration "means that the relative seeking placement shall be the first placement to be considered and investigated." (*Id.*, subd. (c)(1).) The relative placement preference " 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' " (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863 (*Alicia B.*).)

"In determining whether placement with a relative is appropriate, the county social worker *and court* shall consider, but shall not be limited to, consideration of [a list of eight factors]." (§ 361.3, subd. (a), italics added.) Those eight factors include: the best interest of the child, the wishes of the parents and relative, the nature and duration of the child/relative relationship, the relative's desire to care for the child, and the ability of the relative to protect the child from her parents. (*Id.*, subd. (a)(1), (2), (6), (7).) "The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B.*, *supra*, 116 Cal.App.4th at pp. 862-863.) After

7

reunification services are terminated, the parent's interest in the minor's care, custody, and companionship are no longer paramount. The juvenile court's focus shifts to " ' "the needs of the child for permanency and stability." ' " (*In re K.C.*, *supra*, 52 Cal.4th at p. 236.)

"We review a juvenile court's custody placement orders under the abuse of discretion standard of review; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse." (*Alicia B.*, *supra*, 116 Cal.App.4th at p. 863.) Although the juvenile court independently considers the section 361.3 factors, we may not interfere with the juvenile court's ruling unless it manifestly abused its discretion in making its independent evaluation. That is, after viewing all the evidence in light most favorable to the lower court's ruling, it must appear to us that no judge could reasonably have made the same determination. (*Alicia B.*, *supra*, at p. 863.) Since the juvenile court's ruling involves primarily factual issues, our analysis of its exercise of discretion is similar to analyzing the sufficiency of the evidence to support that ruling. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065, superseded on other grounds by statute as stated in *Cesar V.*, *supra*, 91 Cal.App.4th at p. 1032.)

Father argues that the Department failed to adequately assess grandmother and that the juvenile court's placement order was not based on sufficient evidence. However, our review of the record indicates that the trial court acted within its discretion when denying grandmother placement and that its decision was based on substantial evidence.

Grandmother contacted the Department in February 2013 requesting that she be considered for relative placement.[4] Prior to this request, grandmother had not seen L.B.

---

[4] Grandmother had reportedly been in touch with the Department earlier in the dependency process and had told the social worker that she would be available as a placement option for L.B. at any time. However, grandmother lived in Bakersfield. Early in the dependency proceeding, other paternal relatives were also assessed as possible placement options at the suggestion of father but were found to be inappropriate (continued)

since L.B. was three months old. "The nature and duration of the relationship between the child and the relative" is one of the enumerated factors a court shall consider under section 361.3. (§ 361.3, subd. (a)(6).)

The social worker arranged visits between L.B. and grandmother in order to assess the possibility of relative placement and noted that grandmother responded well to L.B. However, Grandmother had an extensive history of CPS referrals. The social worker testified at the section 366.26 hearing that while many of these referrals were unsubstantiated, there was one referral that may have merit. Grandmother was asked about the CPS referrals, and she indicated the numerous referrals resulted from her divorces from past partners.[5] The social worker expressed concern that grandmother would put her current partner's needs above L.B.'s and noted that grandmother had missed an earlier court date because she accompanied her husband to a job. The ability

_____

because they lived in Manteca. The distance made placement inappropriate because the parents were being offered reunification services that required them to visit L.B. several times a week. Presumably, grandmother's distance from parents would have also made placement with her inappropriate during the early stages of the dependency proceeding. Any error or omission made by the Department in failing to assess grandmother as a placement option at that point was therefore harmless.

[5] Father argues that the juvenile court's reliance and consideration of the CPS referrals deprives grandmother and father of their due process rights, because the referrals are unsubstantiated. "Due process requirements in the context of child dependency litigation have . . . focused principally on the right to a hearing and the right to notice. [Citation.] A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses." (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 412-413.) We fail to see how grandmother and father were denied due process with respect to the information about the CPS referrals. The reports prepared for the section 366.26 hearing indicated that the Department was investigating the referrals, and grandmother herself should have been familiar with the content of the referrals. Grandmother testified during the hearing and informed the juvenile court that the referrals were generally unsubstantiated, an assertion that was corroborated by the social worker.

of the relative to provide a safe, secure, and stable home is also one of the enumerated factors a court shall consider under section 361.3.  (§ 361.3, subd. (a)(7)(A).)

In contrast, the social worker testified that L.B., who had been placed in a concurrent home on January 29, 2013, was "thriving."  Her current foster parents were providing L.B. with a weekly toddler gymnastics class, a parent/toddler gymnastics class, a music class, and a peer socialization program through the foster family's church.  The foster family also enrolled L.B. in speech therapy classes.  A court must consider the "best interest of the child" when making its placement decision under section 361.3.  (§ 361.3, subd. (a)(1).)  Evidence therefore supported the determination that it would be in L.B.'s best interest if she remained in her current placement.

Father insists that the juvenile court erroneously relied on the lack of information about grandmother when making its placement decision.  However, the juvenile court did not state that it based its decision only on the lack of information.  During the section 366.26 hearing, the juvenile court cited to several factors in its decision not to place L.B. with grandmother, including the "broken relationship" between father and grandmother and the numerous CPS referrals grandmother had incurred in prior years.

Father insists that the juvenile court's reliance on grandmother's prior CPS referrals was inappropriate.  The ability of a relative to provide a safe, secure, and stable home environment for the child is one of the listed factors to be considered by a juvenile court in its placement decision.  (§ 361.3, subd. (a)(7)(A).)  Because both grandmother and the social worker testified about the CPS referrals, the juvenile court was aware of the referrals' general nature.  We cannot say the juvenile court abused its discretion when it concluded that the referrals were troubling.

Father also maintains that the juvenile court erroneously cited the best interest of the child as an "overriding factor" in its placement order and misapplied our Supreme Court's decision in *In re Stephanie M*. (1994) 7 Cal.4th 295 (*Stephanie M*.).  We

disagree.  Although *Stephanie M.* arose from a markedly different set of facts, as there a motion for a change in the minor's placement had been brought under section 388, we find its discussion of the statutory preference outlined in section 361.3 instructive.  The *Stephanie M.* court reiterated that in the context of a section 388 motion for change of placement after termination of reunification services, the "predominant task of the court [is] to determine the child's best interest[] . . . ."  (*Stephanie M.*, *supra*, at p. 320.)  Regarding the relative preference statute under section 361.3, the court noted that preferential consideration did not create an evidentiary presumption that placement was in the minor's best interest.  (*Stephanie M.*, *supra*, at p. 320.)  Rather, the juvenile court must consider whether the placement is "*appropriate*, taking into account the suitability of the relative's home and the best interest of the child."  (*Id.*, at p. 321.)

Although we are not faced with a change of placement motion brought under section 388 like in *Stephanie M.*, numerous appellate courts have determined that " '[r]egardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child . . . .' "  (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.)  Father claims that by citing the child's best interest as an overriding factor in placement decisions involving relatives, the juvenile court nullified the relative placement preference.  We disagree; in a dependency proceeding, the relative placement preference grants a relative the right to be considered *first* for placement, but placement is not mandated or presumed to be in a child's best interest.  The juvenile court must still make the necessary determination, based on the relevant factors outlined in section 361.3, that the placement is appropriate for the child.  That is what happened here.  The juvenile court weighed placement with grandmother against the stability L.B. was receiving from her current placement.  The juvenile court therefore did not abuse its discretion when it declined to place L.B. in grandmother's care.

Lastly, we disagree with father's argument that the juvenile court should have continued the section 366.26 hearing until the Department completed its assessment of grandmother. A review of the record indicates that the Department had already assessed grandmother as a placement option by arranging visits between L.B. and grandmother, conducting a criminal background check, and speaking with grandmother about placement. Furthermore, the Department had followed up on the information about grandmother's previous CPS referrals, determining that many of the referrals were unsubstantiated. The Department had not visited grandmother's home in Bakersfield, but a full investigation was not necessary. The Department had already determined, based on the available evidence, that grandmother would not be an appropriate placement and that L.B.'s best interest would be suited if she remained at her current placement. No additional investigation was required.

2. ***The ICWA Notice***

Next, Father argues that the juvenile court erroneously concluded that the ICWA's notice requirements were met. He insists that the Department failed to conduct an adequate investigation into L.B.'s potential Indian heritage, as the ICWA notice failed to include basic identifying information about his grandparents. We disagree.

*Legal Framework*

At all stages of a dependency proceeding, the juvenile court must comply with the ICWA. The ICWA was enacted to protect the interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902; see, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.) An Indian child, within the meaning of the ICWA, is a child who is either a member of an Indian tribe or is eligible for membership and is the biological child of a member. (25 U.S.C. § 1903(4); § 224.1, subd. (a).) Where a state court "knows or has reason to know" that an Indian child is involved in a dependency proceeding, statutorily prescribed notice must be given to all

12

tribes of which the child may be a member or eligible for membership. (25 U.S.C. § 1912(a); § 224.2, subd. (a)(3); *In re Samuel P*. (2002) 99 Cal.App.4th 1259, 1264.) Notice to the tribe "shall be to the tribal chairperson, unless the tribe has designated another agent for service." (§ 224.2, subd. (a)(2).) "The failure to comply with the notice requirements of the ICWA constitutes prejudicial error unless the tribe has participated in or indicated no interest in the proceedings." (*In re Samuel P*., *supra*, at p. 1265.)

"Aside from information about the hearing and the tribe's right to intervene in the dependency proceedings, the BIA Guidelines state notice to a tribe 'shall include the following information, if known: [¶] (1) Name of the Indian child, the child's birthdate and birthplace. (2) Name of Indian tribe(s) in which the child is enrolled or may be eligible for enrollment. (3) All names known, and current and former addresses of the Indian child's biological mother, biological father, *maternal and paternal grandparents* and great grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information. (4) A copy of the petition, complaint or other document by which the proceeding was initiated.' "[6] (*In re C.D*., *supra*, 110 Cal.App.4th at p. 225.)

*Compliance with the Notice Requirements*

ICWA Form 010(A) stated that father had reported that "his paternal grandparents were part Choctaw" and that he "denied any current tribal activity." The Department

---

[6] The BIA acts as the agent for the Secretary of the Interior. (*Dwayne P*. *v*. *Superior Court* (2002) 103 Cal.App.4th 247, 253.) The BIA sets forth guidelines for what must be included in a notice under the ICWA. (25 C.F.R. § 23.11(a), (d) & (e); *In re C.D*. (2003) 110 Cal.App.4th 214, 224.) " 'Although the [BIA] Guidelines do not have a binding effect on this court, the construction of a statute by the executive department charged with its administration is entitled to great weight.' " (*In re C.D*., *supra*, at p. 224.)

filed an ICWA attachment to the social worker's report and declared that it had contacted the three Choctaw tribes and the BIA. Attached to this document was the ICWA notice, which contained little information about father's biological mother and father. The form contained no information about father's grandparents, with all of their information, including their names, marked as "unknown."

"The burden is on the Agency to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the BIA." (*In re Louis S*. (2004) 117 Cal.App.4th 622, 630.) The Department was therefore required to reasonably investigate father's claim that he had Indian heritage. (*In re S.M*. (2004) 118 Cal.App.4th 1108, 1117-1118.)

Father informed the Department that his paternal grandparents were part Choctaw, but the ICWA notice sent to the three Choctaw tribes and to the BIA contained no information about the paternal grandparents. Father contends that the Department failed to investigate and obtain pertinent information about his paternal grandparents from both grandmother and himself. However, father does not suggest that he or another family member provided information to the Department about his paternal grandparents that the Department failed to include in its notices to the tribes and the BIA. He also does not assert that there was more information that could have been readily obtained from further investigation into his paternal grandparents' background, and he does not point out the specific information that the Department could have discovered. The Department is not required to conduct a comprehensive investigation into a minor's alleged Indian heritage, nor is it required to "cast about" for further information. (*In re Levi U*. (2000) 78 Cal.App.4th 191, 199; *In re C.Y*. (2012) 208 Cal.App.4th 34, 39.) As indicated on the ICWA notice, information about the paternal grandparents was "unknown."

Father fails to overcome the basic presumption that the Department or the court regularly performed their official duty, as there is nothing in the record that indicates

14

there was some information about L.B.'s Indian heritage that the Department ignored. (Evid. Code, § 664.) "Ordinarily, when a social worker's report or other documentation indicates that ICWA *notice* has been provided, it can properly be presumed that such notice was in compliance with the requirements of the ICWA." (*In re Jeffrey A.* (2002) 103 Cal.App.4th 1103, 1108; *In re L.B.* (2003) 110 Cal.App.4th 1420, 1425 [presuming that notice complied with ICWA "in the absence of any evidence in the record to the contrary or any challenge to this representation in juvenile court"].)

According to the record, the social worker notified the three Choctaw tribes and the BIA. The notice included the identifying information of mother, father, mother's parents, and father's parents. The fact that the notice contained some information about mother and father's parents indicates that the Department engaged in some investigation into L.B.'s Indian heritage. The ICWA notice further contained information that the grandfather on father's side of the family may have Choctaw heritage. The record's silence regarding whether the Department questioned additional paternal relatives about L.B.'s Indian heritage does not mean the Department failed to conduct an adequate inquiry. (*In re Gerardo A.* (2004) 119 Cal.App.4th 988, 995.)

Based on the information provided in the ICWA notice, the noticed tribes reported that L.B. was not eligible for membership, and no tribes intervened in the dependency proceeding. The juvenile court therefore properly concluded that the ICWA did not apply in L.B.'s case.

**DISPOSITION**

The juvenile court's order terminating parental rights is affirmed.

_____
                                     Premo, J.

WE CONCUR:


_____
         Rushing, P.J.


_____
         Elia, J.

16