Filed 11/2/15  In re Sarah L. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re SARAH L., a Person Coming Under the Juvenile Court Law. | B260688<br>(Los Angeles County<br>Super. Ct. No. CK92100) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>EDWARD L.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Teresa Sullivan, Judge.  Affirmed.

Eva Chick, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Mary C. Wickham Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

Edward L. (Father) challenges a juvenile court disposition order. The record supports (1) the removal of Father's daughter from his care and (2) an order that Father participate in parenting classes plus drug and alcohol testing. There was substantial compliance with the notice requirements of the Indian Child Welfare Act. We affirm.

## FACTS

Father's child, Sarah L., was born in 2006. In June 2014, Sarah was detained by the Department of Children and Family Services (DCFS) and placed with the paternal grandparents (PGPs).[1] Sarah was previously detained from Mother, who breastfed Sarah's half brother while using drugs, causing the infant to test positive for amphetamines. Father obtained custody of Sarah in April 2012.

On May 30, 2014, DCFS was notified that Sarah was abused because Father grabbed and squeezed her hands and arms, causing marks and bruises, and called the child names ("bitch," slut" and "whore"). Father chased the paternal aunt with a large knife and clubbed her on the head with a closed fist, in Sarah's presence. The abuse report also alleged that paternal grandmother Grace A. (PGM) struck Sarah on the head with a hair brush and called the child a "pig, slob, nasty and dirty."

Father was evicted from the PGPs' home for abusing drugs and alcohol. He has a criminal record for being under the influence of drugs (in 2014) and driving under the influence of alcohol (in 2007). He and Mother are homeless. Three members of Father's immediate family stated that Father abuses drugs and alcohol. He enrolled in a criminal court diversion program after his recent arrest on drug charges.

When interviewed, Sarah denied that Father engaged in physical altercations or calls her derogatory names; she also denied that the PGM hit her on the head or calls her names. DCFS determined that neither parent made any effective arrangements for Sarah's care or provide for the child's needs. Sarah was detained from both parents,

---

[1] Sarah's mother, M.H. (Mother), is not a party to this appeal. Mother has been addicted to methamphetamine since 2006. She lost custody of three younger children who are not related to Father.

whose whereabouts were unknown. She remained with the PGPs, who are protective, have adequate housing and are able to care for her.

DCFS filed a petition alleging that Father and Mother have a history of substance abuse. Father is a current abuser of illicit drugs and alcohol, which renders him incapable of providing regular care, and he does not provide Sarah with the necessities of life. The parents denied the allegations.

On June 19, 2014, the juvenile court found a prima facie case for detaining Sarah. The parents were given monitored visits and ordered to submit to weekly random drug testing. The court ordered DCFS to investigate Father's claim of Indian ancestry.

A jurisdiction/disposition report was submitted. With respect to the allegations against him, Father admitted to using Vicodin, without a prescription for the narcotic. He stated, "I got caught with an opiate . . . under the influence in public," resulting in his arrest in December 2013; he hoped to complete his drug diversion program by August 2014. Father indicated that he buys Sarah clothing and shoes, and told the PGM to let him know if Sarah needs food. According to the PGM, "earlier in the year [Father] was intoxicated. I took him to court. I think it was a Vicodin. When he was kicked out of the house, he was drunk. My husband said he didn't want [Father] intoxicated if he lived here." The PGM concurred that Father purchased clothing for Sarah. Father felt that the only impediment to taking custody was his lack of housing. Sarah stated, "I want to live here with my grandma. I've lived here for three years."

At a hearing on August 13, 2014, the court ordered DCFS to give notice to all appropriate Indian tribes. It warned Mother and Father that their failure to show up for random testing counts as positive drug tests. In October 2014, DCFS reported that it was still struggling to get the correct names of Father's relatives from the PGM, had sent notices based on the information it had, and would send new notices when the PGM provided more information. During the reporting period, Father failed to appear for drug tests once in August, four times in September, and once in October. He tested positive for cannabinoids and hydrocodone on August 19 and positive for amphetamines,

3

methamphetamine and cannabinoids on August 29. He had one negative test, on September 25, but the sample was "dilute."

The parties stipulated to Sarah's testimony. She has lived with the PGM for several years. At first, Father lived with them and cared for her regularly. After two years, Father left the PGM's home and Sarah does not know why. She would like him to live with her again if possible, but wants to stay at the PGM's home. Father provides her with clothing, shoes and food. Sarah sees Father twice per week, with the PGM serving as monitor. He attended doctor appointments with Sarah and the PGM, and an educational meeting. Sarah loves Father, who has never harmed her. Sarah knows what drugs are but cannot describe them. She has never seen Father take pills and does not know how people act when they are on drugs. Father does not act "weird or strange" when he is with her.

On October 22, 2014, Mother waived her right to trial and pleaded no contest to the petition. DCFS asked the court to dismiss the allegations against Father relating to his failure to provide Sarah with the necessities of life. DCFS argued that Father has had multiple positive tests and was a no-show for testing, which amounts to a positive test. The PGPs evicted Father from their home due to drug and alcohol abuse. Father's counsel conceded that "there is no dispute Father used drugs. Not happy about it, but there is in the evidence that he has used drugs." He also conceded that Father was evicted from the PGPs' home due to alcohol use. Nevertheless, he argued that there is no nexus between Father's drug and alcohol abuse and his alleged neglectful behavior, and no substantial risk of harm to Sarah. Sarah's counsel asked the court to sustain the petition against Father because otherwise "he could remove her from the home; and given [his] substance abuse, that creates a harm."

The court found that DCFS did not sustain its burden of proof as to Father. Father "made an appropriate plan for his child so the child was spared the harm that [Father] is caus[ing] by living in a drug environment. So while the Mother and the Father's battle with substance abuse continues and their instability with housing and other issues [is] ongoing, the evidence before the court is that the Father left the child with the shelter of

4

his parents so that she didn't have to have that harm." It found Father to be nonoffending under the petition.

The court accepted Mother's no contest plea and sustained an allegation that Mother has a history of illicit drug use, including methamphetamine, which negatively impacts her ability to provide care and supervision for Sarah. Sarah was previously declared a dependent of the court due to Mother's drug use. Mother has missed court-ordered drug tests, and her conduct places Sarah at substantial risk of physical harm. Father's counsel stated that Father does not want to change Sarah's placement in any way. With respect to ICWA, the court observed that Sarah was not being removed from an Indian home, inasmuch as she lives with the PGM.

The contested disposition hearing was held on November 20, 2014. Mother was denied reunification services. Father's counsel reiterated that "Father would like the suitable placement to remain at paternal grandmother's house. He would not change that." He requested unmonitored visits, adding that "Father is very much willing to drug test." DCFS contended that Father tested positive for methamphetamine and still poses a risk to Sarah, so he should continue to test to ensure sobriety. Sarah's counsel agreed that the child should remain with the PGM, and that Father should continue to drug test.

The court found clear and convincing evidence of a substantial danger if Sarah is returned to parental care, and no means to protect her without removal from parental custody. Sarah was to remain suitably placed with the PGM. Father was given reunification services. He was ordered to participate in weekly random testing. If any test was missed or dirty, then a full drug rehabilitation program is required. He must participate in a 12-step program, a parenting class, and conjoint counseling with Sarah. Father's visits remained monitored; he was permitted to have overnight monitored visits, but may not be left alone with Sarah.

Father's counsel said, "Your Honor, I really like [child's counsel's] idea, four clean tests and unmonitored [visits]. Could we throw that in, your Honor?" The court assented. DCFS added that once Father has four clean tests and unmonitored visits, he

5

must continue to test clean until the next court hearing. Father's counsel said, "That's obvious." One day after disposition, Father appealed.

**DISCUSSION**

**1. Indian Child Welfare Act (ICWA)**

At the first court hearing, Father completed a form stating, "My grandfather was a registered member of the Apache or Yaqui [tribes]." Father is not a tribe member. With the help of the PGM, an ICWA form was completed stating that "Eduardo [L.]" (Father's parent) is Apache, Navajo and Yaqui. The notice listed great-grandparents and great-great-grandparents, with birth dates. DCFS gave notice to the tribes listed by the PGM. No tribe intervened in the dependency proceeding.

The tribal membership of a great-great-grandfather does not suggest that Sarah qualifies for membership, given that Father denies having membership himself, which did not trigger ICWA notice requirements. (*In re Z.N.* (2009) 181 Cal.App.4th 282, 298.) Even if notice was required, Father does not dispute that DCFS sent notice to all of the tribes identified by the PGM. He observes that the PGM, during a court hearing, spelled the paternal great-great-grandfather's last name as "Olguin" and gave his birth date as December 24, 1905. The notice sent to the tribes omits the letter "l" in Olguin, but contains the date of birth, along with information about Olguin's daughter Esperanza, including her birth date in 1941, and her married name. Given the names and birth dates provided to the tribes for Father, Sarah, grandfather Eduardo L., and other paternal relatives, the omission of a single letter in a great-great-grandparent's last name was not prejudicial. The tribes received meaningful notice, and there was substantial compliance with ICWA notice requirements.

Father maintains that "DCFS should have obtained copies of birth/death certificates and provided them to all federally recognized tribes." He is mistaken. DCFS was entitled to rely upon information provided by the PGM, who seems to be the only person with records relating to Father's biological lineage. DCFS "must inquire as to possible Indian ancestry and act on any information it receives, but it has *no duty* to

6

conduct an extensive independent investigation" to uncover birth or death certificates. (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41, italics added.)

**2. Disposition Order**

### a. *The Child's Removal from Father's Care*

Father contends that the court erred by removing Sarah from his custody because he is nonoffending and made arrangements for her care. At the disposition hearing, Father's counsel stated, "Father would like the suitable placement to remain at paternal grandmother's house. He would not change that." The court did exactly what Father asked it to do, continuing the "suitable placement" that it ordered at the detention hearing. Father cannot claim error when he invited the ruling that he now complains of on appeal. (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1193-1196 [a father was barred from contesting a purported dependency court error that he invited].) Father did not request custody below, or claim that removal was unwarranted. (Compare *In re Isayah C.* (2004) 118 Cal.App.4th 684, 699-700 [a father asked the juvenile court to place his child in his custody].)

Even if Father had not invited the court to suitably place Sarah with the PGM and forfeited his custody claim, the court's decision to remove Sarah from Father's custody is supported by substantial evidence. A dependent child may be removed if there is a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being, and no means of protecting the child without removal. (Welf. & Inst. Code, § 361, subd. (c)(1).) "'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.'" (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.)

The record shows that Father was evicted from the PGPs' home because he was intoxicated: his sisters and stepfather state that Father abuses drugs and alcohol. Father was arrested for drug possession and entered a diversion program in the criminal court

system in 2014.  He admits to being "caught with an opiate . . . under the influence in public."  Before the disposition hearing, Father tested positive for opiates, cannabinoids, amphetamines, and methamphetamine, and missed many tests, regardless of his claim to have successfully completed a drug program.  Father's whereabouts were unknown at the inception of this case, and he lacked stable housing for himself and his child.

A nonoffending parent has a constitutionally protected interest in physical custody, but only in the absence of evidence that the parent's conduct will not be detrimental to the child's safety, protection, or physical or emotional well-being. (*In re A.A.* (2012) 203 Cal.App.4th 597, 605.)  As the juvenile court found, there is a substantial risk of harm if Sarah is in Father's care.  Given Father's unresolved struggle with alcohol, drug abuse and homelessness, the court had to prohibit Father from taking custody of Sarah, for safety's sake.  Although Father temporarily lodged Sarah with the PGPs, without a removal order Father could take Sarah away from her safe living quarters and the court could not ensure "a home environment free from the negative effects of substance abuse."  (Welf. & Inst. Code, § 300.2.)

### b. *Drug Testing and Parenting Requirements*

Father contends that the juvenile court erred by ordering him to participate in random drug and alcohol testing, because he is nonoffending.  Once again, Father caused the challenged ruling.  At the disposition hearing, Father's counsel stated, "Father is very much willing to drug test" and asked the court to "throw in" an order that Father complete four clean drug/alcohol tests before having unmonitored visits with Sarah. Finally, Father's counsel agreed it is "obvious" that Father must continue to test clean until the next court hearing.  Father either invited the ruling that he now complains of on appeal (*In re G.P.*, *supra*, 227 Cal.App.4th at pp. 1193-1196), or he forfeited it by failing to object to the imposition of a drug-testing requirement.

At disposition, the court must order a plan for the family to facilitate reunification "tailored to the particular individual and family, addressing the unique facts of that family." (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598.).  Indeed, the court may make "all reasonable orders for the care, supervision, custody, conduct,

8

maintenance and support of the child." (Welf. & Inst. Code, § 362, subd. (a).) A dispositional order may be imposed even if there is no sustained finding arising from Father's conduct, because the court takes jurisdiction over children, not parents, and a jurisdictional finding against one parent is good against both. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.) In short, "[t]he problem that the juvenile court seeks to address need not be described" in the sustained petition. (*In re Brianna V.* (2015) 236 Cal.App.4th 297, 311.)

If the record shows that a parent has a substance abuse problem, it is appropriate to order drug and alcohol testing to address the parental deficiency. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1007-1008.) Father's admitted substance abuse problems "pose a potential risk of interfering with his ability to make a home for and care for [Sarah]." (*Id.* at p. 1007.) There is no legitimate use for methamphetamine and amphetamines, for which Father tested positive in August 2014. (Compare *In re Drake M.* (2012) 211 Cal.App.4th 754, 767-768 [a father had a physician recommendation to use marijuana to control chronic pain].) Similarly, Father's abandonment of his parental responsibilities throughout 2014, while "living in a drug environment" (in the words of the juvenile court) amply justify a parenting course, to ensure his competency should he eventually receive custody of Sarah. There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

9