[No. C070098. Third Dist. July 11, 2012.]

In re C.Y., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
N.Y., Defendant and Appellant.

36

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., and John F. Whisenhunt, County Counsel, and Joanne East, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—The mother (mother) appeals from the juvenile court's order terminating her parental rights. (Welf. & Inst. Code, § 366.26.)[1] Mother contends the order must be reversed because the Sacramento County Department of Health and Human Services (DHHS) did not make an adequate inquiry into the minor's Indian ancestry as required by the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). We affirm.

---

[1] Undesignated section references are to the Welfare and Institutions Code.

## BACKGROUND

We do not recite the facts underlying dependency jurisdiction and reunification efforts, as they are immaterial to the issues before us.

In June 2009, DHHS filed a section 300 petition on behalf of the then four-year-old minor, alleging mother had a substance abuse problem for which she refused treatment and which placed the minor at risk. The minor's father is deceased, having died in November 2008. At the initial hearing, mother informed the court that the minor may have Indian ancestry and provided the court with a Parental Notification of Indian Status (ICWA-020) form. The form indicated that mother may have Indian ancestry but the name of the possible tribe was "unknown."

Mother did not provide DHHS with a completed Indian ancestry questionnaire or a family tree diagram. Accordingly, the ICWA notice of child custody proceeding, sent to the Bureau of Indian Affairs (BIA), contained (1) the minor's name and date of birth, (2) mother's name, address, date of birth, and that no tribe was identified, (3) the father's name, date of birth, date of death (incorrectly stated as Dec. 2008), and that there was no information as to tribal affiliation, and (4) the maternal grandfather's name.[2] DHHS used the ICWA-030 form to provide this information. Mother informed the court that the information on the form was accurate.

No response from BIA was filed with the court. On March 3, 2010, DHHS filed an in-home status review report indicating the minor was not an Indian child under ICWA. The report recommended termination of dependency. The court subsequently terminated dependency status for the minor. Accordingly, no ICWA finding was made.

In May 2011, a new section 300 petition was filed on behalf of the minor. The petition alleged mother had resumed her substance abuse, had failed and/or refused treatment, and the minor was again at risk. The petition also alleged the minor was at risk because the condition of mother's home did not meet basic health and safety standards.

At the May 11, 2011, detention hearing, mother provided the court with another Parental Notification of Indian Status (ICWA-020) form, indicating, simply, that she may have Indian ancestry. Mother informed the court that she

---

[2] The form indicates that the maternal grandfather listed is the biological maternal grandfather. However, as will be subsequently disclosed, he is actually mother's adoptive father.

did not know the name of the tribe with which she may be affiliated. She explained that she had been adopted and had lost the document that had indicated her biological parents' lineage. As she recalled, the document had listed her biological parents' and grandparents' names and nationalities, and American Indian was one of them.[3] The court asked mother's adoptive father, who was present in court, if he knew the names of the tribes and, although he could confirm that the adoption paperwork indicated mother had some Indian ancestry, he did not know with which tribes she was affiliated, nor did he know of anyone who might have that information. Mother (born in 1966) had been adopted in San Mateo County. The court then asked mother if she knew if the minor's deceased father had any Indian heritage and mother indicated that, to the best of her knowledge, he did not.

The court found the minor may be an Indian child and ordered mother to complete an Indian ancestry questionnaire and return it to DHHS within two days. Mother did not fill out the form. DHHS sent the ICWA notice of child custody proceeding to BIA, with the following information: (1) the minor's name, date of birth, and place of birth, (2) mother's name, address, date of birth, place of birth, and that no tribe was identified, (3) the father's name, date of birth, date of death, place of death, and that there was no information as to tribal affiliation, (4) the maternal grandmother's name, and (5) the maternal grandfather's name, address, and date of birth.[4]

At the June 3, 2011, prejurisdictional status conference, the court specifically addressed the ICWA notice that had been sent to BIA. DHHS had filed a report indicating mother reported she had been adopted when she was a baby and was told her birth records stated she may have Indian heritage but it was not specified. She did not know with which tribe she may be affiliated. She believed the minor was determined to be not eligible for enrollment in any tribe in the previous dependency case. Noting that mother had been unable to identify any specific tribe, the court found ICWA did not apply.

The issue of ICWA compliance was revisited at the August 1, 2011, jurisdiction hearing. BIA had not responded to the ICWA notice. Mother looked at the completed ICWA-030 form DHHS had used to provide notice

---

[3] Under the unique circumstances of this case, we grant mother's motion to take additional evidence on appeal (Code Civ. Proc., § 909), proffering mother's subsequently discovered adoption paperwork, for the sole purpose of noting that the paperwork does *not* provide the names, birth dates, and birthplaces of mother's biological parents or grandparents, nor provide the name of any tribe (but merely indicates her biological father is "German and a little American Indian").

[4] Again, the form indicates that the maternal grandmother and grandfather listed are the biological maternal grandmother and grandfather. They are actually mother's adoptive parents.

and confirmed that everything was accurate except that the form had indicated that the maternal grandmother and grandfather listed were her biological parents, but they are actually her adoptive parents. DHHS represented it would send a clarification letter to BIA. Mother had no information about her biological parents. The court reaffirmed its finding that the notice requirements had been met and ICWA did not apply.

The minor was subsequently adjudged a dependent child of the court, mother was bypassed for services, and parental rights were terminated on December 20, 2011.

## DISCUSSION

Mother contends DHHS did not adequately investigate her Indian ancestry because the social worker failed to pursue several avenues of inquiry which might have revealed additional information about mother's heritage. We conclude that the juvenile court and DHHS met their duty of inquiry.

Congress passed ICWA "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' " (*In re Levi U.* (2000) 78 Cal.App.4th 191, 195 [92 Cal.Rptr.2d 648]; see 25 U.S.C. § 1902; *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30 [104 L.Ed.2d 29, 109 S.Ct. 1597].)

A social worker has "an affirmative and continuing duty to inquire whether a child [in a section 300 proceeding] is or may be an Indian child . . . ." (§ 224.3, subd. (a).) If the social worker "has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information" required to be provided in the ICWA notice. (§ 224.3, subd. (c).) However, neither the court nor DHHS is required to conduct a comprehensive investigation into the minor's Indian status. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1161 [30 Cal.Rptr.3d 726]; *In re Levi U., supra*, 78 Cal.App.4th at p. 199 [no duty to "cast about" for information].)

Mother first contends that there is no evidence DHHS asked her relatives, such as her adoptive parents or her aunt or uncle, if they had information about mother's biological parents or her Indian ancestry. This contention rings hollow.

With respect to her complaint that DHHS never asked the maternal grandfather if he knew anything about mother's Indian heritage or knew the names of her biological parents, the court made these inquiries of mother and her adoptive father at the May 11, 2011, detention hearing. They did not have this information and mother's adoptive father specifically stated that he did not know of anyone who did. DHHS was certainly not required to make the inquiry again and, based on the information provided to the court, had no reason to attempt to track down mother's adoptive mother (and even less reason to contact mother's aunt and uncle) to make further inquiries.[5]

Next, noting mother's comment in the June 3, 2011, report that she believed the minor was determined to be ineligible for enrollment in any tribe in the previous dependency case, mother complains that DHHS did not check that file for any additional information about Indian ancestry it may contain. This argument, however, is based on a misreading of the record. The prior dependency case consists of the proceedings resulting from the June 2009 section 300 petition, the records of which are part of the court file in this case.

Mother also contends that DHHS was required to investigate her adoption records and determine to what tribe she was affiliated. With this contention, we take particular issue.

Initially, we note that the Legislature has addressed and resolved this issue with respect to parents who were adopted in 1994 or after. Family Code section 8619 provides: "The department shall adopt rules and regulations it determines are reasonably necessary to ensure that the birth parent or parents of Indian ancestry, seeking to relinquish a child for adoption, provide sufficient information to the department . . . or [to the] licensed adoption agency so that a certificate of degree of Indian blood can be obtained from the Bureau of Indian Affairs. The department shall immediately request a certificate of degree of Indian blood from the Bureau of Indian Affairs upon obtaining the information. A copy of all documents pertaining to the degree of Indian blood and tribal enrollment, including a copy of the certificate of

---

[5] Contrary to mother's assertion, the record does not demonstrate that DHHS was in contact with mother's adoptive mother. Instead, it indicates that mother's *aunt* was in contact with mother's adoptive mother (who, incidentally, refused to have any contact with mother).

degree of Indian blood, shall become a permanent record in the adoption files and shall be housed in a central location and made available to authorized personnel from the Bureau of Indian Affairs when required to determine the adopted person's eligibility to receive services or benefits because of the adopted person's status as an Indian. This information shall be made available to the adopted person upon reaching the age of majority." With these provisions in place, adopted parents can obtain the information about their Indian ancestry from BIA and provide it to the social worker or court as necessary.

In this case, however, mother was born in 1966, before this statute was enacted. Mother, having misplaced the information provided to her about her biological lineage, contends the burden was on the social worker to obtain that information, and more, through investigation into her sealed and unsealed adoption records. Presumably, mother would have DHHS uncover, not only possible tribal affiliations, but her biological parents' and grandparents' names, birth dates and other personal information, so that information could be provided in ICWA notices. Such actions go far beyond what is reasonable or appropriate. DHHS must inquire as to possible Indian ancestry and act on any information it receives, but it has no duty to conduct an extensive independent investigation for information. (*In re Levi U., supra*, 78 Cal.App.4th at pp. 198–199.)

Mother cites *In re J.T.* (2007) 154 Cal.App.4th 986, 991–995 [65 Cal.Rptr.3d 320] for the proposition that, "[i]f the parent of the dependent child was herself adopted as a child, [DHHS] has a duty to investigate and determine the tribe to which the parent is biologically related." While the social worker in that case did attempt to obtain information from sealed adoption records, the court did not hold that it was required, or even suggest it was advisable. (See *In re J.T., supra*, at pp. 989–991, 994.)

In fact, Congress has specifically made provisions for *mother* to obtain the tribal information from her adoption records. The Child Custody Proceedings subchapter of ICWA specifically provides: *"Upon application by an Indian individual who has reached the age of eighteen and who was the subject of an adoptive placement*, the court which entered the final decree shall inform such individual of the tribal affiliation, if any, of the individual's biological parents and provide such other information as may be necessary to protect any rights flowing from the individual's tribal relationship." (25 U.S.C. § 1917, italics added.)

■ The court ordered mother to fill out an Indian ancestry questionnaire to provide DHHS with the relevant information. Mother did not have information about her biological parents or grandparents, and did not know with which tribes she may be affiliated. Her adoptive father did not have that information either, nor did he know of anyone who did. If additional information about mother's tribal affiliation was contained and still available in adoption records, it was mother's responsibility to make an application to San Mateo County requesting such information and then provide it to the social worker. Instead, mother simply did not fill out the Indian ancestry questionnaire form at all. Mother having "failed to provide any information requiring followup," there was no further duty of inquiry by DHHS. (*In re S.B., supra*, 130 Cal.App.4th at p. 1161.)

Finally, mother claims DHHS's duty of inquiry was not satisfied because it did not try to contact the minor's deceased father's relatives to further inquire into any potential Indian heritage he may have had. Mother notes that the paternal grandparents' names were listed on the father's death certificate, as were the name and address (as of Nov. 2008) of the father's adult daughter.

■ The initial inquiry, however, need only be made to the parents. "The Guidelines require 'the state court [to] make inquiries . . . .' (Guidelines, § B.5.a, 44 Fed.Reg. at p. 67588.) The court could hardly make inquiries of persons not parties to the proceeding [(or of a deceased parent)]. Although the state rule of court imposes a duty of inquiry on both the court and the social services agency (Cal. Rules of Court, [former] rule 1439(d) [(see now rule 5.481(a))]), the Judicial Council form designed to implement this rule indicates that the initial inquiry need only be made to the parents. As the Judicial Council writes the rules of court, its interpretation seems definitive. Even the CWS Manual merely requires the social worker to 'ask the child [and] his parent or custodian . . . .' (CWS Manual, § 31-515.111.)" (*In re S.B., supra*, 130 Cal.App.4th at p. 1161.)

Here, mother and the father (although never married) had been in a relationship for 15 years.[6] An initial inquiry was made of mother and she had no information that the father had any possible Indian heritage. Based on this information, neither the court nor the social worker had any reason to believe the minor had any Indian heritage through the father. The social worker was not required to cast about for Indian connections with no basis and, thus, had no further duty of inquiry.

---

[6] The court found the father to be the minor's presumed father, having received the minor into his home and openly held her out as his own. (Fam. Code, § 7611, subd. (d).)

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Butz, J., concurred.