Filed 1/16/14  In re R.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC AND SOCIAL SERVICES , | E059109 |
| Plaintiff and Respondent; v. | (Super.Ct.No. RIJ113791) |
| RICHARD R., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Richard R., father of R. R., appeals from a judgment terminating his parental rights after he failed to visit his child for six months and did not participate in reunification services. On appeal, he argues that reversal is required because the Riverside County Department of Public Social Services (DPSS) failed to adequately investigate R.R.'s Indian heritage and to properly notify the Choctaw tribes, thereby violating the Indian Child Welfare Act (25 U.S.C. §§ 1901 et seq. (ICWA)). We affirm.

## BACKGROUND

R.R. was born in 2007, testing positive for methamphetamine at birth. A dependency petition was filed alleging neglect (Welf. & Inst. Code[1], § 300, subd. (b)), and failure to provide support on the part of an alleged father.[2] (§ 300, subd. (g).) Mother denied having any Indian ancestry. The petition was sustained and R.R. was adjudged a dependent. R.R. was placed in the home of her maternal grandmother and mother was ordered to participate in reunification services.

At the six month status review hearing, R.R. was returned to her mother's custody under Family Maintenance Services upon the recommendation of DPSS, based on mother's cooperation with the case plan and her significant progress. On April 17, 2008, the dependency was terminated. Up to this point, R.R. was reaching all developmental milestones.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Mother initially identified another man as the father, and his whereabouts were unknown.

On April 12, 2012, mother called 911, crying. When police arrived at the home, they found puddles of blood outside the home. When they knocked, mother answered the door carrying R.R., and informed the officers that she was home alone, and was going to sleep. The police demanded entry because of the trail of blood outside, and found mother's then boyfriend on the couch with a puncture wound to his left arm.[3]

Mother admitted she had thrown glasses, plates and a knife at the boyfriend, causing the wound. Mother appeared to be under the influence of methamphetamine, having relapsed approximately six months before this incident. Mother attributed her relapse to the stress of caring for R.R., who was diagnosed as autistic. Mother was arrested for assault with a deadly weapon and being under the influence of methamphetamine. She identified R.R.'s father as Richard R. and acknowledged a history of domestic violence with him, which resulted in a restraining order against him in 2010. A paternity judgment named Richard as father in July 2009. Father had not visited R.R. because of the 2010 restraining order, which denied visitation, and because he lived in Las Vegas.

A new dependency petition was filed, naming father along with two other alleged fathers.[4] R.R. was removed from her mother's home and placed with her maternal grandmother. Mother again denied having any Native American heritage, but father

---

[3] The police report indicated the victim was found on a bed in the bedroom.

[4] This petition was subsequently amended, but the particular allegations are irrelevant to this appeal.

informed the social worker that he was one-sixteenth Choctaw through his mother, whose great, great, great paternal grandfather had married a full blooded Choctaw woman.[5]  The social worker contacted father's mother who could not provide the names or dates of birth of her Native American ancestors, although the ICWA notice includes the name of her father.

Notice of the dependency proceedings was sent to the Bureau of Indian Affairs, the Choctaw Nation of Oklahoma, the Jena Band of Choctaw Indians, and the Mississippi Band of Choctaw Indians.  The notice contained the paternal grandmother's names (maiden and married), address, birth date and place, as well as the paternal great grandfather's name and an incomplete birth date.  Return receipts for the Choctaw Nation of Oklahoma, the Jena Band of Choctaw Indians, and the Mississippi Band of Choctaw Indians were filed.  On May 29, 2012, the Choctaw Nation of Oklahoma wrote a letter indicating that the child is not enrolled or eligible for enrollment.

On June 8, 2012, the court conducted the jurisdictional and dispositional hearing. The court found the allegations of the petition were true and that ICWA did not apply to the Choctaw Nation of Oklahoma, but may apply (to the other named tribes).  Custody was removed from the parents and services were ordered for mother and father.  An

---

[5]  There is no blood quantum requirement for obtaining a Certificate of Degree of Indian Blood Card for the Choctaw tribes.  Tribal membership may be acquired as long as one can establish he or she is a descendent of someone enrolled on the final Choctaw Dawes Commission Rolls by blood.
(http://www.choctawnation.com/services/departments/enrollment-cdib-and-tribal-membership/ [as of December 3, 2013].)

assessment of father's home was ordered to be conducted through the Interstate Compact for the Placement of Children (ICPC).

On June 20, 2012, the social worker submitted a tribal response letter from the Mississippi Band of Choctaw Indians indicating that none of the named individuals was enrolled in the tribe.

In the meantime, father seemed hesitant to proceed with the ICPC evaluation and indicated he might be unable to participate in his case plan. For her part, R.R. was functioning at the level of an 18-month old due to her autism. Her condition had been diagnosed at the age of 22 months due to language regression. She had difficulty with advance motor skills, such as walking backwards or jumping in place, had problems with inattention and impulse control, and needed assistance to take care of individual needs, so she continued to wear a diaper. R.R. received services from the Center for Autism and Related Disorders.

During the first status review period, mother did not participate in her plan and tested positive for methamphetamine on more than one occasion. In August 2012, mother attempted to visit while under the influence of drugs. For this reason, mother was informed that visits, which had taken place at the maternal grandmother's home to this point, would now take place at the Child Protective Services (CPS) office. The first visit at CPS went well, but on August 21, 2012, the second visit was terminated early when mother spanked R.R. for trying to eat her feces while mother changed her diaper. Mother was informed that she would have to drug test prior to future visits, and no subsequent

visits occurred. On December 7, 2012, DPSS filed an application to change the prior court order (§ 388; Form JV-180), seeking to terminate mother's reunification services.

Father did not participate in his plan, either, and he did not request visits. In an addendum report submitted on December 14, 2012, the social worker recommended that services be terminated as to both parents and that a section 366.26 hearing be ordered. The mother was living with friends but had been in jail for two weeks prior to that. She was now motivated to enter a rehabilitation program and had scheduled an appointment with MFI Recovery. Neither parent had maintained regular contact with DPSS, nor had they begun any component of their case plan. The maternal grandmother, with whom R.R. remained placed, was interested in adopting the child. The social worker also requested that the court find ICWA did not apply.

On January 29, 2013, the court conducted the contested six-month review hearing. At the hearing, County Counsel requested a finding that ICWA did not apply in light of the passage of time without a response indicating that R.R. is an Indian child. The court made the finding that ICWA did not apply, and terminated father's reunification services because he had made no progress and because he had not had contact with R.R. for six months. The court granted the section 388 petition filed by the county, terminating mother's reunification services for failing to participate regularly in the case plan.

On May 29, 2013, the court conducted the section 366.26 hearing. Mother filed a section 388 petition on the day of the hearing, seeking reinstatement of reunification services. The court denied the application, and proceeded to terminate parental rights, freeing R.R. for adoption. Father timely appealed.

6

## DISCUSSION

Father argues on appeal that the social worker failed to adequately investigate father's Indian heritage and failed to send proper notices to the Indian tribes. We disagree.

ICWA was enacted to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture. (*In re C.Y.* (2012) 208 Cal.App.4th 34, 39 (*In re C.Y.*); *In re Levi U.* (2000) 78 Cal.App.4th 191, 195.) In state court proceedings involving the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe have the right to intervene at any point in the proceeding. (25 U.S.C. § 1911, subd. (c).)

Thus, in any involuntary proceeding in a state court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child must notify the parent or Indian custodian and the Indian child's tribe of the pending proceedings. (25 U.S.C. § 1912, subd. (a).)

A social worker has an affirmative and continuing duty to inquire whether a child in a section 300 proceeding is or may be an Indian child. (§ 224.3, subd. (a).) If a social worker has reason to know that an Indian child is involved, the social worker is required to make further inquiry regarding the possible Indian status of the child. (§ 224.3, subd. (c).) However, neither the court nor DPSS is required to conduct a comprehensive

7

investigation into the minor's Indian status. (*In re C.Y, supra,* 208 Cal.App.4th at p. 39; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1161 (*In re S.B.*).)

Father argues that the social welfare agency and dependency court have a duty to inquire about, and, if possible, *obtain* [italics in AOB] the information, citing *In re Nikki R.* (2003) 106 Cal.App.4th 844, 848. However, *Nikki R.* merely points to affirmative duties of both the court and the county welfare department to *inquire* whether a dependent child is or may be an Indian child. (*Ibid.*) None of father's authorities, nor any that we have found in our own research, support such an expansive interpretation of the social worker's or the court's obligations. Our interpretation is also supported by the Federal Guidelines: they require only that "the state court shall make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe." (Bureau of Indian Affairs Guidelines for State Courts, 44 Fed. Reg. 67584, 67588, (Nov. 26, 1979).)

Decisional authority is in accord. In *In re C.Y.,* the mother, who had been adopted, claimed Indian heritage, but did not know the name of the tribe, and had lost the document that indicated her biological parents' lineage. Subsequently discovered paperwork reaffirmed that her biological father was "'German and a little American Indian,'" but did not provide the names, birth dates, or birthplaces of her parents or grandparents, and did not name a particular tribe. (*In re C.Y.*, *supra*, 208 Cal.App.4th at p. 38.) On appeal, mother argued that the social services agency failed to adequately investigate her Indian ancestry by failing to pursue avenues of inquiry which might have

8

revealed additional information about her heritage. The Court of Appeal disagreed, holding that while the social worker has an affirmative and continuing duty to inquire whether a child is or may be an Indian child, neither the court nor the social services agency is required to conduct a comprehensive investigation. (*Id.,* at p. 39.)

In *In re S.B,* the court observed that mother could argue that the social worker did not make any inquiry of the maternal grandmother to follow up after mother had indicated the child had no Indian heritage. (*In re S.B., supra,* 130 Cal.App.4th at pp. 1160-1161.) However, the court answered the rhetorical question in the negative, stating that "as long as the social worker did inquire of the parents, and as long as the parents failed to provide any information requiring followup, she had no further duty of inquiry." (*Id.,* at p. 1161.)

Here, father provided information to the social worker that he may have Choctaw ancestry. The social worker contacted the paternal grandmother to make further inquiry, and apparently learned the name of the paternal great grandfather, along with incomplete information about that relative's date of birth. The paternal grandmother had no additional information. The social worker provided all the information she had obtained from both the father and the paternal grandmother to the Choctaw tribes. Two tribes responded that father and R.R. were not members and not eligible for tribal membership, and no other responses were received for more than 60 days.

The court made sufficient inquiry into R.R.'s possible Indian heritage. The social worker conducted an adequate investigation and made sufficient inquiry of father and the paternal grandmother. Father did not provide additional information requiring followup,

9

and did not indicate there were other relatives who might have provided additional information to include in the ICWA notice. No further investigation was required.

Because the court and the social worker adequately discharged their duties of inquiry, the court's finding that ICWA did not apply was proper.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                    P. J.

We concur:

HOLLENHORST
                    J.

KING
                    J.

10