Filed 8/15/23  In re C.B. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re C.B., Jr., a Person Coming Under the Juvenile Court Law. | B328021<br><br>(Los Angeles County Super. Ct. No. 21CCJP00599) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.B.,<br><br>        Defendant and Appellant. |  |

        APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee.  Conditionally affirmed and remanded with directions.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

―――――――――――――――――

C.B. (father) appeals from a juvenile dependency court order terminating his parental rights. Father's sole contention is that the juvenile court erred in finding the Los Angeles County Department of Children and Family Services (DCFS) conducted an adequate inquiry to determine whether C.B., Jr. (C.B.) is or may be an Indian child within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Father informed DCFS and the court that he believes the paternal grandfather has Indian ancestry. Although father was unable to provide contact information for the paternal grandfather or any relatives from his father's side of the family, the record reflects that DCFS had other viable leads it failed to pursue. We conditionally affirm the trial court order and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Father's appeal is limited to DCFS's compliance with ICWA, thus we provide only a brief summary of the general background of the case. In February 2021, C.B.'s 14-year-old older sister committed suicide. At the time, DCFS was already investigating the family due to concerns that father was failing to obtain appropriate mental health and medical care for the sister, and that father was exhibiting signs of concerning mental health. Multiple family members indicated that father talked to himself

2

and that he was having "episode[s]" similar to those of the paternal grandmother who was reported to have been "bipolar schizophrenic." Father had been uncooperative and withheld "pertinent information" from DCFS. The children's mother died by suicide several years earlier.

In April 2021, the juvenile court sustained a dependency petition asserting father subjected 10-year-old C.B. to physical abuse and deprived him of adequate food. The petition further alleged father's medical neglect of the sister and his own unresolved mental and emotional problems placed C.B. at substantial risk of serious physical harm. The court asserted dependency jurisdiction over C.B. and removed him from father. DCFS placed C.B. with his maternal grandmother. In May 2022, the juvenile court terminated father's reunification services. In January 2023, the court terminated parental rights and freed C.B. for adoption, naming the maternal grandmother as the prospective adoptive parent.

### ICWA Background

The detention report indicated father initially signed forms stating his family has "Native American Indian Heritage." Father told DCFS he did not know the name of the tribe, but "he has Native American Ancestry from paternal grandfather." A social worker "asked [father] if he could get further information from paternal grandfather and he said 'no.'"

In the initial investigation in early February 2021, DCFS spoke with a paternal aunt, Nichole E., and two paternal great-

3

aunts, Renee R., and Ida R.[1]  Paternal aunt Nichole E. told DCFS the paternal grandmother died 10 years earlier and a paternal uncle was also deceased.[2]  Paternal great-aunt Renee R. told DCFS the paternal family had a history of mental illness and the paternal grandmother suffered from "bipolar schizophrenia" before she died of a heart attack years before.  According to Renee R., the paternal grandmother "raised her children alone while working and going to school."  Renee R. felt father needed psychiatric help and explained that while the family had attempted to help father, he refused and distanced himself from the family.  The detention report did not indicate that DCFS asked any of the paternal family members about father's claim of Native American ancestry.

At the detention hearing on February 11, 2021, the juvenile court indicated father had submitted an ICWA-020 form stating he "does possibly have Native American ancestry on his paternal grandfather's side, Lyle [B.]"  However the court continued, "I believe, from reading the reports, that [father] doesn't have additional information."  The court deferred ICWA findings and

---

[1]     The paternal grandmother, Willa R., was Renee R.'s sister and the two shared the same last name.  Father told DCFS that his last name was never the same as paternal grandmother's.

[2]     Nichole E. and father do not share the same last name. The report appears to indicate father and Nichole E. had the same mother—the paternal grandmother—but is silent as to whether they shared the same father.  Nichole E. told DCFS she "lost her mother and she was raised by her father."

4

ordered DCFS to investigate further.[3] At the same hearing, father requested that an unnamed paternal cousin be assessed for placement of C.B. Father's counsel indicated she could provide the cousin's information to DCFS.

On February 23, 2021, DCFS spoke with father again regarding any Indian heritage, and father again stated he had Native American ancestry from the paternal side of his family, his father's name is Lyle B., and father did not know the name of the tribe. The jurisdiction and disposition report informed the court: "[The dependency investigator] asked the father if he could acquire further information from paternal grandfather, father stated that he has not spoken to [paternal grandfather] in a while and father was not able to provide [paternal grandfather's] contact information. Father stated that he has a male cousin that could probably provide more information to his native American ancestry. Father agreed to contact his male cousin and follow-up with [the dependency investigator]. As of the writing of this report father has not provided additional information as to his Native American Ancestry."

DCFS contacted paternal relatives again for interviews in advance of the jurisdiction hearing. At the time of the writing of the report, paternal aunt Nichole E. had not responded to a

---

[3]     The court also asked father if he was aware of mother having any Indian ancestry. Father said he believed mother had "Chinese background." The court ordered DCFS to follow up with the maternal grandmother about any Indian heritage.

5

detailed voicemail message.[4] Paternal great-aunt Renee R. again told DCFS that father stopped communicating with the paternal family for long periods. Renee R. said the paternal grandmother had been very private and would not allow anyone to help her and father was the same way. Renee R. also informed DCFS that the paternal family was concerned about father's mental health and she believed father needed help. The dependency investigator left messages with paternal great-aunt Ida R. and a paternal "relative," George R., but had not received a response by the time of the writing of the report.

Although paternal great-aunt Renee R. told DCFS in an earlier interview that the paternal grandmother raised her children on her own, father told DCFS that "his parents were very responsible and responsive to their [children's] needs."

The jurisdiction hearing was set for early March 2021. In advance of the hearing, DCFS filed a last minute report explaining that DCFS called father on March 2, to inquire further about Native American ancestry. Father said he had not been able to get in contact with relatives to obtain any more information. At the March 4 hearing, the court asked if counsel for DCFS was requesting orders or findings regarding ICWA. Counsel asked the court to order DCFS to notify the Bureau of Indian Affairs (BIA). The court agreed, noting there was no information other than that father may have American Indian heritage. The court additionally asked father if he could provide any additional information about paternal grandfather or the

---

[4] The dependency investigator called relatives and left messages on February 23 and 24, 2021. The report was signed on February 24 and filed on February 25, 2021.

6

claim of ICWA applicability. Father responded: "I reached out to my father. I went to the police department to locate him, and at this time I don't have any information on how to gain more access on my heritage." Father said he did not have a contact number for the paternal grandfather. The court asked that if father obtained a number that he provide it to his attorney.

DCFS sent ICWA notices to the BIA and the Secretary of the Interior. A social worker subsequently submitted a last minute report to the court indicating father had not provided any additional information or updates about his Native American ancestry. Paternal great-aunt Renee R., however, told DCFS she had no knowledge of any Native American ancestry on the maternal side of father's family. Renee R. had no contact with the paternal grandfather, "as he was not involved in father's life." However, DCFS noted Renee R. "believes she will be in contact with some of father's paternal relatives on 3/31/2021 due to [C.B.'s sister's] services and would try to provide [the dependency investigator] with contact information regarding paternal family members if available."

At the next hearing in April 2021, the juvenile court indicated the disposition hearing would be postponed "for the ICWA investigation to be completed." The court asked counsel for father and counsel for C.B. if there was anything further "with regard to ICWA." Neither counsel had additional information or requests.

In advance of the continued disposition hearing, DCFS reported the BIA had responded to the ICWA notice by indicating insufficient tribal information was provided to assist in locating C.B.'s tribe. DCFS did not state whether paternal great-aunt Renee R. was able to provide any additional information about

father's paternal relatives. However, at the beginning of the hearing, counsel for DCFS argued: "It looks like on 2/11/21 [the court] found that ICWA did not apply. Furthermore, based [on] all of [the] information, or the limited information, I think it is safe to say that there is no reason to know this is an ICWA case. The Department has really tried to go above and beyond to locate all of the potential relatives, interviewed the maternal grandmother, a paternal aunt, and father didn't have any further information for the paternal grandfather." Counsel asked the court to continue to find that ICWA did not apply. When asked by the court, father's counsel offered no argument.

The court found no reason to know ICWA applied, explaining: "I think the Department did their due diligence in interviewing the relatives. At this point in time, there is no reason to know that there's any American Indian heritage of the father or mother." Although paternal great-aunt Renee R. was present and testified at the hearing, no information was elicited from her about any contacts with father's paternal relatives.

## DISCUSSION

Father contends substantial evidence did not support the juvenile court's finding that ICWA did not apply because DCFS failed to interview paternal relatives other than paternal great-aunt Renee R. to determine whether C.B. is or may be an Indian child. We conclude DCFS's inquiry was inadequate and remand is necessary for further proceedings.

### I. Duty of Inquiry

Section 224.2 sets forth the duties of a county welfare department and the juvenile court in determining whether a child is or may be an Indian child. An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a

8

member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

Section 224.2, subdivision (a), provides that both the court and the Department have an "affirmative and continuing duty" to inquire whether a child is or may be an Indian child, beginning with the "initial contact," which includes asking the party reporting abuse or neglect if they have any information that the child may be an Indian child.  Under section 224.2, subdivision (b), if a child is placed in the Department's temporary custody, the agency must inquire whether the child is or may be an Indian child, by asking a nonexclusive group that includes the child, the parents, and extended family members.

Under section 224.2, subdivision (e), if the court or social worker has reason to believe an Indian child is involved in the proceeding, but does not have enough information to determine there is a reason to know the child is an Indian child, the court or the social worker must make further inquiry, as soon as practicable.  "[R]eason to believe" means the court or social worker has information "suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)  "Further inquiry" includes actions such as "[i]nterviewing the parents, Indian custodian, and extended family members" to gather information that would be necessary to provide notice to any relevant tribes.  (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).)  An " 'extended family member' " is an adult who is the "Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or

9

stepparent," or an individual as otherwise defined by an Indian child's tribe. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Section 224.2, subdivision (i)(2), provides that if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." "On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

## II. Substantial Evidence Did Not Support the Juvenile Court's ICWA Finding

Father informed DCFS and the juvenile court he believes he has Indian ancestry. DCFS interviewed father several times, then conducted further investigation. DCFS interviewed paternal great-aunt Renee R., whose statements regarding the substantive issues in the case indicated she was paternal grandmother's sister, and she was connected to that side of father's family. Renee R., paternal great-aunt Ida R., and paternal relative George R., all appeared to be related to the paternal grandmother. Renee R. denied her family had any Indian ancestry. Ida R. and George R. did not return DCFS's calls in advance of the jurisdiction hearing. Further, father's claim of Indian ancestry was unrelated to the paternal grandmother's family. The juvenile court could reasonably conclude that DCFS's interviews with Renee R. were sufficient to establish no reason to believe or know C.B. was an Indian child based on heritage related to father's mother's side of the family.

10

(*In re E.W.* (2023) 91 Cal.App.5th 314, 323–324 [substantial evidence where mother repeatedly denied Indian ancestry and agency interviewed maternal aunt and paternal grandmother, but did not interview other available relatives]; *In re J.S.* (2021) 62 Cal.App.5th 678, 690 [father indicated he may have Indian ancestry and source of information was his mother; agency's interview with paternal grandmother was adequate inquiry].)

However, to the extent there was reason to believe C.B. is or may be an Indian child, the reason arose from father's statement that he believed paternal *grandfather* has Native American ancestry. Father indicated he had no contact information for paternal grandfather, although he would try to obtain it. Subsequently father told the court he had attempted to determine paternal grandfather's whereabouts but was unsuccessful. Although father had previously suggested an unnamed paternal cousin might have information, he later told the court: "I don't have any information on how to gain more access on my heritage."

In *In re Q.M.* (2022) 79 Cal.App.5th 1068, a panel of this court explained that when a parent fails "to provide names and contact information for extended family members, DCFS's ability to conduct an exhaustive ICWA inquiry necessarily is constrained. Although it is well established that the duty to develop information bearing on whether a child is an Indian child 'rests with the court and the Department, not the parents or members of the parents' families' [citation], in most cases the court and DCFS cannot satisfy this duty without the participation of the parents. While we believe it reasonable in many cases to require DCFS to follow up on leads provided by the parents, we cannot ask the agency to intuit the names of

11

unidentified family members or to interview individuals for whom no contact information has been provided." (*Id.* at p. 1082.)

We additionally acknowledge that DCFS is not required to " 'cast about' for investigative leads" (*In re A.M.* (2020) 47 Cal.App.5th 303, 323) or to "conduct an extensive independent investigation for information" (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41). Had father simply been unable to provide contact information for any of his paternal relatives, the juvenile court reasonably could have concluded DCFS's inquiry was adequate and the agency exercised due diligence.

But here there was reason to believe C.B. may be an Indian child and there were additional leads DCFS did not pursue. While DCFS's counsel argued to the juvenile court that the agency "really tried to go above and beyond to locate all of the potential relatives," any such efforts were not reflected in the record with respect to father's paternal relatives. There is no evidence that DCFS attempted to interview paternal aunt Nichole E. about Indian ancestry. And after Renee R. volunteered to try to obtain contact information for father's paternal relatives, there was no indication that any social worker ever followed up with her to determine if she had been successful. Pursuing those two avenues was imminently achievable. DCFS had contact information for Nichole E. and managed to speak with her once before;[5] Renee R. testified in court the same day

---

[5] We note that although DCFS was unable to reach Nichole E. during the agency's investigation for the jurisdiction and disposition report, a social worker called her and left a message at most two days before the report was submitted to the court.

12

DCFS's counsel argued nothing more could be done to investigate father's claim of Indian ancestry.

On this record, we cannot find substantial evidence supported the juvenile court's finding that DCFS exercised due diligence and conducted an adequate inquiry to determine whether C.B. is or may be an Indian child. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 553–554, 555 (*Y.W.*) [DCFS failed to conduct adequate inquiry where agency had potentially viable lead to contact mother's biological parents but failed to follow up].)

## III. We Cannot Find the Error Harmless

The Courts of Appeal have adopted several divergent standards for determining whether a child welfare agency's failure to comply with the duty of inquiry is prejudicial error requiring reversal. These standards range from an automatic reversal approach (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; *Y.W., supra,* 70 Cal.App.5th 542, 556), to presumptive affirmance (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1065), with variations in between, including the test set forth in *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578 (*Dezi C.*). The *Dezi C.* court concluded the proper application of our state's test for harmless error in the ICWA inquiry context is that "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to

No subsequent report indicated whether Nichole E. ever returned the social worker's call.

the juvenile court's ICWA finding." (*Ibid.*; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1014.)

We need not discuss the various standards in detail here. Excepting the presumptive affirmance approach, we conclude that application of any of the other various tests employed by our fellow appellate courts mandates a remand for further proceedings in this case.

Father expressed a belief that paternal grandfather has Native American ancestry but he could not identify a specific tribe. Other information in the record indicated inquiry of other family members would be necessary to diligently investigate this claim. Paternal great-aunt Renee R., paternal grandmother's sister, told DCFS that paternal grandfather was not involved in father's life and the paternal grandmother had raised father alone. Renee R. also indicated father had isolated himself from family for long periods of time. Father was at times uncooperative with DCFS, and was also reported to be experiencing significant mental health issues.

Under these circumstances, father had only limited information, while other members of his father's family may have had additional information beyond father's general belief of Indian ancestry. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779 [reviewing court has reason to believe further inquiry might lead to different results if parents' reporting may not be fully informed].) Interviews of extended family members from father's paternal family, if available, would "bear meaningfully" on the court's ICWA determination. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

We therefore conditionally affirm the juvenile court order, remanding the matter for further inquiry and compliance with ICWA.

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally affirmed. The case is remanded to the juvenile court to order DCFS to immediately comply with the inquiry provisions of Welfare and Institutions Code section 224.2 as to available extended family members who are related to the paternal grandfather. After ensuring DCFS has complied with the inquiry, and, if applicable, notice provisions of ICWA and related California law, the juvenile court shall determine whether ICWA applies. If the court determines ICWA does not apply, the order terminating parental rights shall remain in effect. If the court determines ICWA does apply, it shall vacate its order terminating parental rights and proceed consistent with ICWA and related state law.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.

16