Filed 1/25/24  In re K.B. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | B329628<br><br>(Los Angeles County Super. Ct. No. 19LJJP00257A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>Daniel M.,<br><br>     Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Jennifer Baronoff, Juvenile Court Referee. Affirmed.

Jack Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Daniel M. (father) appeals from a juvenile court order terminating his parental rights. Father contends the juvenile court erred in finding the Los Angeles County Department of Children and Family Services (DCFS) conducted an adequate inquiry to determine whether minors K.B. and A.M. are or may be Indian children within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Both parents denied having any Indian ancestry, as did maternal and paternal relatives who were interviewed. However, father argues DCFS's inquiry was not sufficiently diligent. We affirm the trial court order.

**FACTUAL AND PROCEDURAL BACKGROUND**

In light of the limited issue raised on appeal, we only briefly summarize the facts underlying the proceedings. In 2019, the juvenile court sustained petitions alleging the parents' domestic violence, mother's mental and emotional problems, and father's substance abuse placed the children at substantial risk of suffering serious physical harm. The court asserted dependency jurisdiction over the children and removed them from the parents' custody. DCFS placed both children with the maternal grandmother. In 2023, the court terminated parental rights. The maternal grandmother is the prospective adoptive parent.

2

### *ICWA Background*

In January 2019, in connection with the initial investigation, mother told DCFS that K.B. had no Indian ancestry. At subsequent hearings, both parents submitted Parental Notification of Indian Status ICWA-020 forms indicating they have no Indian ancestry as far as they know. In April 2019, the juvenile court found it had no reason to know K.B. is an Indian child, but ordered the parents to keep DCFS, their attorneys, and the court aware of any new information relating to possible ICWA status. DCFS detained A.M. soon after he was born in May 2019. Both parents again denied having any Indian ancestry, including in additional Parental Notification of Indian Status forms. In June 2019, the juvenile court found it had no reason to know A.M. is an Indian child.

A June 2019 jurisdiction and disposition report indicated mother was removed from her biological mother at an early age and placed in the care of Barbara B. (referred to herein as maternal grandmother), who eventually adopted her. The report included only an approximate spelling of mother's biological mother's surname. The maternal grandmother also adopted mother's two siblings, both now adults.[1] Father reported that his father died before he was born and he was raised by the paternal grandmother and his stepfather. Father has three older brothers.

---

[1] The record does not clearly indicate whether mother's brothers are her biological siblings. The June 2019 jurisdiction and disposition report stated only that the maternal grandmother "also adopted [mother's] two siblings, Jared (age 19) and Jordan (age 23)." A December 2022 section 366.26 report indicated the maternal grandmother "adopted three children from the Department and their adoption finalized in 2002."

In March 2022, the court ordered DCFS to provide an update as to whether it had conducted an ICWA inquiry of "all known relatives." In June 2022, a social worker interviewed the maternal grandmother, who stated mother has no Indian heritage. The maternal grandmother also had no information for any of mother's biological relatives. In July 2022, the court ordered DCFS to interview the paternal grandmother. DCFS conducted a "due diligence" search to locate the paternal grandmother and eventually reached her in November 2022. The paternal grandmother told DCFS neither she nor her family had any Native American heritage. She reported there were no other family members who could provide further information.

In March 2023, the court ordered DCFS to interview two of mother's friends, mother's two "adoptive brothers," father's stepfather, and father's three older brothers. In April 2023, DCFS reported a social worker twice called paternal grandmother to obtain contact information for father's stepfather and three older brothers, but the social worker was unable to speak to anyone and the paternal grandmother did not respond to the worker's messages requesting a return call.[2] The social worker was also unable to reach father. A telephone number DCFS had for one of mother's friends was no longer in service.

---

[2] DCFS's April 2023 report indicated a social worker twice called "maternal grandmother" at a specific telephone number to try to obtain contact information for *father's* three brothers and his stepfather. The telephone number listed was identified in an earlier report as the *paternal* grandmother's number. It appears the April 2023 report contained a typographical error in stating the social worker called the *maternal* grandmother, when, in fact, the worker called the *paternal* grandmother in an attempt to obtain contact information for *father's* brothers and stepfather.

When asked for the two friends' contact information, mother said she was no longer in touch with either one. When asked for contact information for her adoptive brothers, mother responded: " 'I don't speak to anyone of them. I'm sorry.' "

In April 2023, prior to terminating parental rights, the juvenile court found there had been a "thorough I.C.W.A. review" and that it had no reason to know ICWA applied in the case.

## DISCUSSION

Father contends DCFS and the court failed to comply with ICWA requirements and state law because additional relatives were not interviewed. We find no error.

## I. Duty of Inquiry

Under Welfare and Institutions Code section 224.2, subdivision (a), both the court and the county child welfare agency have an "affirmative and continuing duty" to inquire whether a child is or may be an Indian child.[3] An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

Under section 224.2, subdivision (b), if a child is placed in the Department's temporary custody, the agency must inquire whether the child is or may be an Indian child, by asking a nonexclusive group that includes the child, the parents, and extended family members. An " 'extended family member' " is an adult who is the "Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew,

---

[3] All undesignated statutory references are to the Welfare and Institutions Code.

first or second cousin or stepparent," or an individual as otherwise defined by an Indian child's tribe. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) Further inquiry is required if the court or social worker has reason to believe a child is an Indian child. (§ 224.2, subd. (e).)

Section 224.2, subdivision (i)(2), provides that if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."

In general, we review the juvenile court's ICWA findings for substantial evidence. (*In re N.F.* (2023) 95 Cal.App.5th 170, 178; see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005 (*Ezequiel G.*) [adopting substantial evidence review of juvenile court finding that it had no reason to know child is an Indian child but abuse of discretion review of decision that ICWA inquiry was adequate].)

## II.    Substantial Evidence Supported the Juvenile Court's ICWA Finding

Father contends DCFS failed to interview all "available" family members, thus the agency's inquiry was inadequate.

As to paternal relatives, DCFS interviewed father and the paternal grandmother. The paternal grandfather died before father was born. Both father and the paternal grandmother denied any Indian ancestry. The paternal grandmother further told a social worker there were no other relatives who would have additional information. On appeal, father asserts DCFS was

6

required to interview the paternal great-grandfather and father's three adult brothers.[4]

We disagree. Substantial evidence supported the juvenile court's ICWA finding related to father based on the information DCFS received from the paternal grandmother and father. Section 224.2 requires an inquiry to determine whether a child is or may be an Indian child. An Indian child is either a member of an Indian tribe, or the membership-eligible biological child of a member of an Indian tribe. As a panel of this court explained in *Ezequiel G.*, "an Indian child is one with a tribal affiliation, not merely Indian ancestry," and "tribal membership typically requires an affirmative act by the enrollee or her parent." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1009, 1010.) As a result, the statements from both father and the paternal grandmother that the family has no Indian ancestry, that the children are not Indian children, and that no other relative had additional information, provided a substantial basis for the juvenile court to conclude there was no reason to believe or know the children are Indian children by virtue of father's lineage. Nothing in the record suggests the paternal uncles or the paternal great-grandfather had information regarding the

---

[4]     The record does not indicate that DCFS ever had direct contact with the paternal great-grandfather. However, he was present at an April 2019 hearing with the paternal grandmother. At the outset of the case, mother also told DCFS the paternal great-grandfather called her occasionally to check on K.B.

7

children's Indian status that differed from what father or the paternal grandmother had already provided.[5]

Indeed, even where there has been some indication that a child may be an Indian child, courts have found an agency's inquiry sufficient without interviews of every possible relative. For example, in *In re E.W.* (2023) 91 Cal.App.5th 314, the mother initially informed the agency the maternal grandmother had some Native American ancestry, but she later repeatedly denied any such heritage. (*Id.* at p. 322.) The father denied any Native American ancestry. The agency interviewed a maternal aunt and the paternal grandmother, both of whom denied either family had Native American ancestry. The agency did not interview other available relatives. (*Id.* at pp. 323–324.) The appellate court found substantial evidence supported the juvenile court's finding of adequate inquiry and that ICWA did not apply. The court explained the interviews conducted " 'reliably answered' the question of whether the children were Native American children" and the parents did not "explain how not interviewing additional relatives . . . casts any doubt on the reliability of the answers already obtained from the parents and relatives." (*Id.* at p. 323; cf. *In re J.S.* (2021) 62 Cal.App.5th 678, 690 [father indicated he may have Indian ancestry and source of information was his mother; agency's interview with paternal grandmother was adequate inquiry].) The same reasoning applies here.

In reviewing the juvenile court's ICWA findings, "the focus of the court's analysis should not be on the number of individuals

---

[5]     We note the paternal great-grandfather was not an "extended family member" within the meaning of section 224.1, subdivision (c) and 25 U.S.C. § 1903(2). (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.)

interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009.) Here, the juvenile court could reasonably conclude the paternal grandmother was a reliable source of information about the children's potential or actual membership in an Indian tribe as a result of father's lineage. The information obtained from father and the paternal grandmother was sufficient to allow the juvenile court to conclude ICWA did not apply through father and that DCFS conducted an adequate and diligent inquiry as to father's lineage.

We further note that with respect to the paternal uncles, DCFS never had contact information for them. The paternal uncles were not interviewed as part of the agency's investigation of the underlying case. DCFS was repeatedly unable to locate father throughout the pendency of the case, including when the juvenile court ordered DCFS to interview the paternal uncles. The paternal grandmother also did not return repeated calls asking for the paternal uncles' contact information. The record reflects that DCFS infrequently communicated with the paternal grandmother and had difficulty getting in touch with her on prior occasions. Father fails to explain how DCFS could conduct an inquiry of relatives it had no means of contacting, despite the agency's efforts to obtain their information.

In *In re Q.M.* (2022) 79 Cal.App.5th 1068, a panel of this court explained that when a parent fails "to provide names and contact information for extended family members, DCFS's ability to conduct an exhaustive ICWA inquiry necessarily is constrained. Although it is well established that the duty to develop information bearing on whether a child is an Indian child

9

'rests with the court and the Department, not the parents or members of the parents' families' [citation], in most cases the court and DCFS cannot satisfy this duty without the participation of the parents.  While we believe it reasonable in many cases to require DCFS to follow up on leads provided by the parents, we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Id*. at p. 1082.)

Likewise, as to mother's family, DCFS interviewed the only relative available, the adoptive maternal grandmother.  The maternal grandmother denied mother had any Indian ancestry.  The agency further asked the maternal grandmother for information about mother's biological relatives.  She could not provide any contact information for them.  Mother also denied that the children were Indian children, denied that she had any Indian ancestry, and indicated she did not have contact information for her brothers.

Father suggests DCFS had an obligation to locate and review mother's adoption documents or "seek information" about the phonetically spelled name of mother's biological mother as part of the ICWA inquiry.  Yet, he cites no legal authority to support his claim that this form of extensive investigation to locate mother's biological family members was necessary to satisfy section 224.2.  Indeed, courts have held that the child welfare agency is not required to " 'cast about' for investigative leads" (*In re A.M.* (2020) 47 Cal.App.5th 303, 323 (*A.M.*)) or to "conduct an extensive independent investigation for information." (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41 [*rejecting* argument that

10

agency was required to investigate parent's adoption records to determine if child was or may be an Indian child].)

*In re Y.W.* (2021) 70 Cal.App.5th 542 (*Y.W.*), offers a helpful contrast. As in this case, the mother in *Y.W.* was adopted. However, the adoptive maternal grandmother knew the name of the biological maternal grandfather, and she was able to obtain contact information for the biological maternal aunt. (*Id.* at p. 549.) There was no record that DCFS followed up with the adoptive maternal grandmother to pursue the leads for the mother's biological relatives. The juvenile court further erroneously indicated the adoptive maternal grandmother did not have current contact information for the biological maternal grandparents, despite an agency report stating the opposite. (*Id.* at p. 555.)

The *Y.W.* court explained that although the mother was adopted, the investigative trail regarding her biological family did not end with the adoptive maternal grandmother. Instead, the adoptive maternal grandmother had "blazed a new trail of ICWA information: She had access to knowledge about [the mother's] biological family the Department could have obtained with a phone call or e-mail." (*Y.W.*, *supra*, 70 Cal.App.5th at p. 555.) Under those circumstances, the court concluded DCFS failed to make an adequate ICWA inquiry, and the juvenile court erred in failing to ensure the agency had adequately investigated.

Here, the investigative trail ended with mother and the adoptive maternal grandmother. DCFS did not have an accurate name for the biological maternal grandmother. Both mother and the adoptive maternal grandmother said they had no contact information for mother's biological relatives. Father "has not demonstrated there was a viable lead that would require [DCFS]

11

'to make a meaningful effort to locate and interview [mother's] extended family members to obtain whatever information they may have as to the [children's] possible Indian status.' [Citation.]"[6] (*A.M.*, *supra*, 47 Cal.App.5th at p. 323 [the mother was adopted, her biological parents were deceased, and she had no information for any other biological relatives].) The record supported the juvenile court's conclusion that DCFS exercised due diligence and conducted an adequate inquiry with respect to mother's lineage.

The authorities father relies upon to support his argument do not suggest reversal is warranted in this case. In *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), the court concluded reversal is required where the record demonstrates the child welfare agency failed in its duty of initial inquiry and there was "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) Here, we do not conclude DCFS failed in its duty of

---

[6] Father asserts that DCFS made no attempt to contact mother's brothers except by unsuccessfully trying to call the adoptive maternal grandmother in March 2023. Father suggests this demonstrated a lack of diligence because DCFS was in regular contact with maternal grandmother. However, as noted above, the April 2023 report appeared to erroneously indicate a social worker attempted to contact *maternal* grandmother, when the telephone number listed was the *paternal* grandmother's and the calls were to obtain information for *father's* brothers and stepfather. In a June 2022 report, DCFS informed the court it asked maternal grandmother "for any other biological relations to the mother for further input as the mother was adopted, but [maternal grandmother] *did not have the information.*" (Italics added.) The April 2023 report further advised the court that mother denied having her brothers' contact information.

initial inquiry as the agency interviewed both the parents and extended family members on both sides.

Further, the record does not reveal the existence of other readily obtainable information DCFS failed to pursue that was likely to bear meaningfully upon whether the children are Indian children. In *Benjamin M.*, the agency was unable to locate the father and failed to ask either his brother or sister-in-law whether the child had Indian ancestry through the father's family, even though the agency had spoken to both relatives about the case. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) In this case, DCFS asked both parents about Indian heritage, they both denied any Indian ancestry, and the agency further interviewed an extended family member on the maternal and paternal sides of the children's families. And, despite social worker efforts, DCFS was unable to obtain contact information for nearly all other relatives.

Similarly, in *In re D.B.* (2022) 87 Cal.App.5th 239 (*D.B.*), the child welfare agency conducted an ICWA inquiry of only the parents and did not ask *any* paternal relatives whether the child was or may be an Indian child, despite speaking to at least one of the relatives about other issues. (*Id*. at p. 243.) Here, DCFS spoke with maternal grandmother and the paternal grandmother, both of whom denied the children are or may be Indian children. Maternal grandmother had no way of contacting mother's biological relatives. The paternal grandmother indicated there were no other paternal relatives who could provide additional information. DCFS did not speak to any other relatives at any other point in the case. The analysis of the *D.B.* court does not apply here. *In re Oscar H.* (2022) 84 Cal.App.5th 933 (*Oscar H.*), is inapposite for similar reasons. In *Oscar H.*, the

13

child welfare agency asked neither the father nor any paternal relatives whether the child was or may be an Indian child. That is not the situation in this case.[7]

As recently explained in *In re H.B.* (2023) 92 Cal.App.5th 711, the section 224.2, subdivision (b) extended family member inquiry "is not intended to obligate county welfare departments to search for possible Indian ancestry without regard to cost or other practical considerations. Rather, it is intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work.' [Citation.] Despite its broad terms, section 224.2, subdivision (b) does not require inquiry with every adult living extended family member. . . . Our review is therefore not a mechanistic analysis of whether the record supports a finding of literal compliance with the statute, but 'whether the ICWA inquiry conducted has reliably answered the question at

---

[7] Father additionally appears to contend the juvenile court erred in finding DCFS conducted an adequate ICWA inquiry because there was no evidence the agency inquired of the person reporting child abuse, "or any other person which the ICWA inquiry is not limited to, prior to filing the section 300 petition." Yet, the record suggests the person who called in the original referral was an employee at a "drop-in center" who witnessed mother and father engage in a violent altercation. There is no indication the drop-in center employee had any particular familiarity with mother or her family, or that she could be expected to have any information about whether the children are or may be Indian children. We reject father's contention that there was insufficient evidence to support the juvenile court's ICWA findings, or that the juvenile court abused its discretion in determining DCFS conducted an adequate inquiry, because the agency failed to interview the reporting party in this case.

14

the heart of the ICWA inquiry: Whether a child involved in a proceeding "is or may be an Indian child." ' [Citation.]" (*Id.* at p. 720, citing *Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009.)

In sum, the record establishes DCFS interviewed the parents and available extended family members, received reliable information as to father's lack of Indian ancestry, and had no viable leads to obtain more information about mother's biological family. The juvenile court's ICWA findings were proper.

## DISPOSITION

The juvenile court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

I concur:

EDMON, P. J.

LAVIN, J., Concurring:

Although I do not agree with the majority opinion in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, I agree that, in this case, DCFS exercised due diligence by contacting all available extended family members to determine whether the minors are or may be Indian children. Accordingly, I agree that the order must be affirmed.

LAVIN, J.