Filed 3/4/24  In re D.M. CA4/2
*See Dissenting Opinion*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.M. et al.; Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E081344 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100603) |
| v. | OPINION |
| V.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Conditionally reversed and remanded.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

1

V.M. (mother) appeals orders of the Riverside County Juvenile Court terminating her parental rights pursuant to Welfare and Institutions Code section 366.26[1] as to her two children, D.M. and M.M. (the children). We will conditionally reverse the orders for compliance with section 224.2 and rule 5.481, California's provisions designed to implement and enhance the Federal Indian Child Welfare Act of 1978 (25 U.S.C. § 1901, et seq.).

## BACKGROUND

In October 2020, the Los Angeles County Department of Child and Family Services (DCFS) took the children into protective custody under exigent circumstances, placed them with their presumed father, and filed a juvenile dependency petition alleging the children came within subdivision (b)(1) of section 300.

The petition included Indian Child Inquiry attachments stating the children may have Indian ancestry. On the first day of the detention hearing, father filed a Judicial Council Forms, form ICWA-020, indicating the children have Cherokee ancestry, and provided the name and telephone number of the paternal grandmother. The court ordered DCFS to investigate father's claim, specifically directing DCFS to follow up with the paternal grandmother, father, and "all appropriate relatives." It also directed DCFS to "send out proper ICWA notices," even though DCFS requested it not be required to perform that task because the children were being released to a parent.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise designated. References to rules are to California Rules of Court.

When the hearing resumed three days later, DCFS reported the paternal grandmother said the family's Cherokee heritage was just a myth and was not true. Based on that information, the court found it had no reason to know the children were Indian children. Thereafter, both parents denied having Indian ancestry.

The court sustained an amended version of the petition, and at the April 2021 hearing on disposition, it adjudged the children dependents of the court and continued them in father's care with provision of family maintenance services and ordered enhancement services for mother.

Two months later, DCFS removed the children from father's custody, placed them with their paternal grandmother, and filed a section 387 supplemental juvenile dependency petition. The court sustained the petition, removed the children from father, and ordered family reunification services for him.

In September 2021, the children's cases were transferred to Riverside County. Family reunification services were terminated a year later and, in May 2023, the court found the children are not Indian children, terminated parental rights of mother and father as to them, and ordered the paternal grandmother's application for adoption be given preference. Mother timely filed notice of this appeal.

## DISCUSSION

On appeal, mother argues the juvenile court failed to comply in full with the initial inquiry provisions set forth in subdivision (b) of section 224.2 because neither DCFS nor the Riverside County Department of Public Social Services (the Department) asked the

3

maternal great-uncle or the paternal aunt about their family's Indian ancestry even though both relatives were readily available.

ICWA was enacted by Congress to protect the best interests of Indian children, and to promote the stability and security of Indian tribes and families in child custody proceedings, including juvenile dependency cases. (25 U.S.C. §§ 1902, 1903(1); 25 C.F.R. § 23.106.) To that end, California law imposes an affirmative and continuing duty on the court and child services agencies such as DCFS and the Department to inquire whether a child for whom a Welfare and Institutions Code section 300 juvenile dependency petition has or may be filed is or may be an Indian child. (§ 224.2, subd. (a).) An Indian child is defined as an unmarried person under the age of 18 and who is either (i) a member of an Indian tribe, or (ii) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).) To come within ICWA, the Indian tribe must be eligible to receive services provided by the Secretary of the Interior because of their status as Indians. (25 U.S.C. § 1903(8), (11).)

Section 224.2 sets forth California's duty of ICWA inquiry. As relevant here, the child services agency's duty of inquiry begins when it initially contacts with a child for whom a section 300 petition may be filed. (§ 224.2, subd. (a).) At that time, it must at minimum ask the reporting party whether that person has any information that the child may be an Indian child. (*Ibid.*) It is well settled that if, as here, the agency takes a child into custody without a protective custody warrant, the statute expands the required inquiry set forth in subdivision (a) to include the child, parents, legal guardian, extended

4

family members, and others who have an interest in the child.[2] (§ 224.2, subd. (b).)[3] Rule 5.481(a)(5) requires the agency to include in its filings on an ongoing basis a detailed description of all inquiries undertaken, and all information it received pertaining to the child's Indian status.

The affirmative and ongoing duty of the agency and the juvenile court to make ICWA inquiries and the agency's specific obligation to ask extended family members about the child's Indian status are imposed by state, not federal, law.  (§ 224.2, subds. (a), (b); rule 5.481.)  Accordingly, reversal is permitted only if we find the error was prejudicial.  (Cal. Const., art. VI, § 13; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*).)

We recognize our courts are divided on the question of what sort of failure of inquiry constitutes prejudicial error when a child services agency fails to comply with the inquiry provisions, and that our Supreme Court is poised to resolve the issue.  (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779-782, review granted, Sept. 21, 2022, S275578.)

---

[2]     What persons qualify as an extended family member is defined by law or custom of the tribe or, in the absence of such law or custom, shall be a person who has reached the age of 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

[3]     This court is divided on the issue whether compliance with the expanded inquiry requirement set forth in subdivision (b) of section 224.2 is required when a child is removed pursuant to a protective custody warrant.  (Compare *In re Delila D.* (2023) 93 Cal.App.5th 953, 962, review granted Sept. 27, 2023, S281447 [subd. (b) applies whenever a child is removed from home] with *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 [subd. (b) does not apply if a child is removed pursuant to a protective custody warrant].)

Unless and until our Supreme Court instructs otherwise, we will continue to follow our opinion in *Benjamin M.*, *supra*, 70 Cal.App.5th 735.  There we adopted the view that a reviewing court must conditionally reverse a no-ICWA finding if the record demonstrates that the child services agency did not fulfill its initial duty of inquiry by asking readily available persons who might have helpful information likely to bear meaningfully upon whether a child is an Indian child.  (*Benjamin M.*, at p. 744; see *In re Josiah T.* (2021) 71 Cal.App.5th 388, 408 ["the court may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child services agency's] inquiry that is not proper, adequate, or demonstrative of due diligence."].)

Here, the reports of DCFS reflect the maternal great-uncle and paternal aunt were known and readily available.  The October 2020 detention report lists the Riverbank, California address and telephone number of the maternal great-uncle.  The January 2021 report states the paternal aunt was supervising visits between the children and their mother.  There is no mention in those reports or subsequent ones that any effort was made by DCFS or the Department to contact either of the relatives, each of whom might reasonably have helpful information regarding whether the children come within ICWA.[4]

The Department acknowledges those family members were not interviewed but argues (i) the contacts made with the paternal and maternal grandmothers suffice to

---

[4]    We note the Department's oral representation to the court during the permanent plan selection hearing that the maternal and paternal grandmothers denied that the maternal and paternal grandfathers had Native American ancestry.  There is no mention whether the Department had contact information for either grandfather or made any effort to request it from the parents or grandmothers.

6

satisfy the extended relative inquiry requirement, and (ii) the failure to interview the aunt and great-uncle is harmless because mother has not shown she would have enjoyed a different or more favorable outcome had that inquiry been made.

In support of its sufficient inquiry claim, the Department notes that section 224.2 does not specify how many extended family members it must interview and, because it interviewed the children's grandmothers and the parents, it complied with its duty to make a reasonable inquiry. We disagree. By its plain language, subdivision (b) of section 224.2 contemplates a broad inquiry of extended family members and others having an interest in the child.

The Department is correct that a child services agency is not required to conduct a comprehensive investigation of a child's Indian status or to cast about for information shedding light on the subject. (*In re C.Y.* (2012) 208 Cal.App.4th 34, 39 [no duty to cast about for information]; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1161 [comprehensive investigation not required].) That does not mean, however, that it may choose not to interview readily available extended family members and others who have an interest in the children who may have potentially meaningful information on the theory there is no reason to believe that those persons would not yield any new information. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Relying on *In re A.C.* (2021) 65 Cal.App.5th 1060, the Department argues that its failure to interview paternal aunt or the maternal great-uncle was harmless because mother has not made an affirmative assertion of Indian ancestry and, in all events, there is no reason to suspect those relatives have any meaningful information on the subject. We

are not persuaded.  In *Benjamin M.* we declined to adopt the approach taken in cases such as *A.C.*  (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743-745.)  We noted there that the Legislature placed the burden of making inquiry provisions and searching for evidence of Indian ancestry on the child services agencies, not the parent.  (*Ibid.*)  Moreover, ICWA's purpose is not limited to protecting the interests of Indian children and their families but encompasses as well the separate and distinct rights of the tribes to intervene in (or exercise jurisdiction over) a custody proceeding involving an Indian child.  (25 U.S.C. §§ 1901, 1902, 1911; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7, 9; *Benjamin M.*, at pp. 743-745.)

Naturally, a tribe cannot exercise its rights to intervene in a child custody proceeding if it does not have notice of it.  And, for proper notice to be given, there must be an adequate investigation to determine whether the children who are the subject of the proceeding have or may have Indian ancestry.  Compliance with the ongoing and affirmative duty of initial inquiry set forth in section 224.2, subdivisions (a) and (b), and rule 5.481 is crucial to that investigation.  As we explained in *Benjamin M.*, though we cannot know what extended family members will say when interviewed by the Department about a child's ancestry, their answers are likely to bear meaningfully on the question whether the child comes within ICWA.  (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.)  We cannot simply assume from the statements made by some members of the family that they are not aware of (or are simply denying) Native American ancestry that other extended family members or others who have an interest in the children will not have any useful information bearing on the subject.  (*Id.* at pp. 742-743 [until the

8

child services agency complies with its duty to gather information by conducting an initial inquiry, we cannot know what information an initial inquiry, properly conducted, might reveal].)

## DISPOSITION

The orders terminating parental rights are conditionally reversed.  On remand, the juvenile court shall order the Department to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3).  If the juvenile court determines that ICWA does not apply, then the court shall reinstate the orders.  If the court determines that ICWA does apply, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ                         
                                                    P. J.

I concur:

CODRINGTON                  
                           J.

9

MENETREZ, J., Dissenting.

The majority opinion concludes that the duty to inquire of extended family members was violated because no child welfare agency asked either the paternal aunt or the maternal great-uncle about possible Native American ancestry. (Maj. opn., *ante*, at p. 6.) But the term "extended family member" is defined by statute, and a great-uncle is not an extended family member under that definition. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c); maj. opn., *ante*, at p. 5, fn. 2.) Thus, the statutory duty to inquire of extended family members was violated only as to the paternal aunt.

But both parents denied Native American ancestry, and the paternal grandmother repeatedly denied that either she or the paternal grandfather had any Native American ancestry. The paternal grandmother also was aware of the claim of Cherokee ancestry but insisted that it was just a myth. Nothing in the record indicates that the paternal aunt (i.e., the paternal grandmother's daughter) would have any information likely to bear on the determination of whether the children in this case are Indian children within the meaning of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.). Rather, this appears to be a case in which it is "obvious that additional information would not have been meaningful to the inquiry" and "the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 743.)

1

Because the failure to inquire of the paternal aunt was not prejudicial, the orders terminating parental rights should be affirmed.  I therefore respectfully dissent.

<u>MENETREZ            </u>
J.